1  BINGHAM MCCUTCHEN LLP
   ROSS E. CAMPBELL (SBN 75998)
2  *ross.campbell@bingham.com*
   BETH McGOWEN (SBN 148747)
3  *beth.mcgowen@bingham.com*
   1900 University Avenue
4  East Palo Alto, CA 94303-2223
   Telephone: (650) 849-4400
5  Facsimile: (650) 849-4800

6  HALL PRANGLE & SCHOONVELD, LLC
   DAVID C. HALL (*pro hac vice*)
7  *dhall@hpslaw.com*
   200 South Wacker Drive, Suite 3300
8  Chicago, IL 60606
   Telephone: (312) 267-6201
9  Facsimile: (312) 345-9608

10 Attorneys for Defendants WILLIAM PICHÈ, PAUL N.
   BEAUPRE, M.D., ARTHUR W. DOUVILLE, M.D.,
11 and KENNETH I. TAN, M.D.

12

                    UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14
                          SAN JOSE DIVISION
15

16

17 RICHARD B. FOX, M.D.,                         No. 08-CV-01098 RS

18         Plaintiff,                            DEFENDANTS' NOTICE OF MOTION
       v.                                        AND JOINT MOTION TO DISMISS
                                                 PURSUANT TO FEDERAL RULE OF
19 WILLIAM PICHÈ, PAUL N. BEAUPRE, M.D.,         CIVIL PROCEDURE 12(b)(6);
   ARTHUR W. DOUVILLE, M.D., MARK S.             MEMORANDUM OF POINTS AND
20 MCCONNELL, M.D., AND KENNETH I. TAN,          AUTHORITIES
   M.D.,
21                                               Date:   August 20, 2008
          Defendants.                            Time:   9:30 a.m.
22                                               Place:  Courtroom 4
                                                 Judge:  Hon. Richard Seeborg
23

24

25

26

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

## TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................. 4

II.   SUMMARY OF ALLEGATIONS ....................................................................... 5

III.  ARGUMENT ....................................................................................................... 6

      A.   Standard of Review ..................................................................................... 6

      B.   Each Of Plaintiff's Claims Is Barred By The Applicable Statute Of
           Limitations ................................................................................................. 7

           1.   Plaintiff's Antitrust Claims Are Time Barred ............................................ 7

           2.   Each of Plaintiff's State Law Claims Is Barred By The Applicable
                Statute of Limitations ................................................................................ 9

      C.   Each Of Plaintiff's Claims Under Sections 1 And 2 Of The Sherman Act
           Should Be Dismissed On The Grounds That Plaintiff Has Failed To
           Allege Sufficient Facts To State A Claim For Relief ........................................ 10

           1.   Each Of Plaintiff's Claims For Relief Under Section 1 Sherman
                Act Should Be Dismissed As Plaintiff Failed to Allege a Contract,
                Combination, or Conspiracy Within the Meaning of Section 1 .............. 10

           2.   Plaintiff Fails To Allege Facts Sufficient To Prove A Substantial
                Effect On Interstate Commerce .................................................................... 12

      D.   Plaintiff's Claims Under Section 2 Of The Sherman Act Should Be
           Dismissed ................................................................................................. 14

           1.   Plaintiff Fails To State A Claim For Monopolization ........................................ 14

           2.   Plaintiff Fails To State A Claim For Attempted Monopolization ................ 15

           3.   Plaintiff Fails To State A Claim For Conspiracy to Monopolize ............ 16

      E.   Plaintiff's State Law Claims ................................................................................ 16

           1.   Plaintiff Has Failed To Allege A Claim For Retaliation ......................... 16

           2.   Plaintiff Has Failed To Allege A Claim For Breach Of Contract Or
                Breach Of The Implied Covenant Of Good Faith And Fair Dealing ....... 18

           3.   Plaintiff Has Failed To Allege A Claim For Interference With
                Prospective Economic Relations ................................................................. 20

I.    CONCLUSION .................................................................................................... 22

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

1

## TABLE OF AUTHORITIES

2

Page

3

Cases

4

Acoustics, Inc. v. Trepte Construction Co., 14 Cal. App. 3d 887 (1971) .................................... 18

5

ALA, Inc. v. CCAIR, Inc., 29 F.3d 855 (3d Cir. 1994) ............................................................... 7

6

Am. Ad. Mgmt. v. GTE Corp., 92 F.3d 781 (9th Cir. 1996) ...................................................... 10

7

Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007) ................................. passim

8

Buckaloo v. Johnson, 14 Cal.3d 815 (1975) ............................................................................... 20

9

Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336 (9th Cir. 1996) ....................................................... 5

10

Cascade Health Solutions v. PeaceHealth, 502 F.3d 895 (9th Cir. 2007) .................................. 15

11

Cinebase Software, Inc. v. Media Guaranty Trust, Inc., 1998 WL 661465 (N.D.
    Cal. Sept. 22, 1998) ................................................................................................................ 22

12

13

David Orgell, Inc. v. Geary's Stores, Inc., 640 F.2d 936 (9th Cir. 1981) .................................... 8

14

Della Penna v. Toyota Motor Sales, U.S.A., 11 Cal. 4th 376 (1995) ......................................... 21

15

DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53 (1st Cir. 1999) ....................... 12

16

Edwards v. Fresno Cmty. Hosp., 38 Cal. App. 3d 702 (1974) ...................................................... 9

17

Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d 590 (1989) .......................................... 22

18

Foley v. Interactive Data Corp., 47 Cal. 3d 654 (1988) ............................................................. 20

19

Forsyth v. Humana, Inc., 114 F.3d 1467 (9th Cir. 1997) ............................................................ 14

20

Gemini Aluminum Corp. v. Cal. Custom Shapes, 95 Cal. App. 4th 1249 (2002) ....................... 21

21

Hilton v. Children's Hosp.-San Diego, 2007 U.S. Dist. LEXIS 16517 (S.D. Cal.
    2007) ....................................................................................................................................... 10

22

In re Ditropan XI Antitrust Litig., 2007 U.S. Dist. LEXIS 78423 (N.D. Cal. Oct.
    11, 2007) ................................................................................................................................. 11

23

24

In re Graphics Processing Units Antitrust Litig., 527 F.Supp. 2d 1011 (N.D. Cal.
    2007) ....................................................................................................................................... 11

25

In re Multidistrict Vehicle Air Pollution v. Gen. Motors Corp., 591 F.2d 68 (9th
    Cir. 1979) .................................................................................................................................. 8

26

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

TABLE OF AUTHORITIES
(continued)

Page

Jablon v. Dean Witter & Co., 614 F.2d 677 (9th Cir. 1980)............................................................7

Janda v. Madera Cmty. Hosp., 16 F. Supp. 2d 1181 (E.D. Cal. 1998) ...........................18, 19, 22

Khajavi v. Feather River Anesthsia Med. Group, 84 Cal. App. 4th 32 (2000)...........................16

Kinderstart.com v. Google, Inc., 2007 U.S. Dist. LEXIS 22637 (N.D. Cal. March
    16, 2007) ...................................................................................................................14, 15

Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003).....................................21

Marrese v. Interqual, Inc., 748 F.2d 373 (7th Cir. 1984)............................................................13

McClain v. Real Estate Bd. Of New Orleans, Inc., 444 U.S. 232 (1980)....................................12

McFaddin v. H.S. Crocker Co., Inc., 219 Cal. App. 2d 585 (1963) ..............................................9

O'Byrne v. Santa Monica-UCLA Medical Ctr., 94 Cal. App. 4th 797 (2001) ...........................19

Pace Indus., Inc. v. Three Phoenix Co., 813 F.2d 234 (9th Cir. 1987).........................................7

Paladin Assocs. v. Montana Power Co., 328 F.3d 1145 (9th Cir. 2003) ...............................10, 16

Papasan v. Allain, 478 U.S. 265 (1986).........................................................................................6

Rosenberg v. Healthcorp Affiliates, 663 F. Supp. 222 (N.D. Ill. 1987) ...............................12, 13

Seglin v. Esau, 769 F.2d 1274 (7th Cir. 1985)............................................................................13

Smith v. City & County of San Francisco, 225 Cal. App. 3d 38 (1990) .....................................20

Smith v. N. Mich. Hosp., Inc., 703 F.2d 942 (6th Cir. 1983) ......................................................15

Spear v. Cal. State Auto. Ass'n, 2 Cal. 4th 1035 (1992) ...............................................................9

Swartz v. KPMG, LLC, 401 F. Supp. 2d 1146 (W.D. Wash. 2004)............................................19

United States v. Grinnell Corp., 384 U.S. 563 (1966) ................................................................15

United States v. Yellow Cab Co., 332 U.S. 218 (1947)................................................................16

Weisbuch v. County of L.A., 119 F.3d 778 (1977) ......................................................................19

Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321 (1971) .................................................7

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

1

TABLE OF AUTHORITIES
(continued)

2

Page

3    <u>Statutes</u>

4    Cal. Civ. Code § 1558 ........................................................................................ 18

5    Cal. Civ. Code § 339(1) ....................................................................................... 9

6    Fed. R. Civ. P. 12(b)(6)........................................................................................ 6

7    15 U.S.C. § 15b..................................................................................................... 7

8    22 Cal. Admin. Code §§ 70701 & 70703 ....................................................... 8, 19, 21

9    Cal. Bus. & Prof. Code § 2056 .......................................................................... 16, 17

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

No. 08-CV-01098 RS

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

1    **NOTICE OF MOTION AND MOTION**

2    TO PLAINTIFF RICHARD B. FOX, M.D., AND HIS ATTORNEYS OF RECORD:

3        PLEASE TAKE NOTICE that on August 20, 2008 at 9:30 a.m., or as soon

4    thereafter as the matter may be heard, before the Honorable Magistrate Judge Richard Seeborg,

5    Courtroom 4, 5th Floor, United States District Court, 280 South First Street, San Jose, California,

6    defendants William Pichè, Paul N. Beaupre, M.D., Arthur W. Douville, M.D., and Kenneth I.

7    Tan, M.D. (collectively referred to herein as "Defendants"), will and hereby do jointly move this

8    Court for an order dismissing each claim of Plaintiff Richard B. Fox M.D.'s First Amended

9    Complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that Dr. Fox has failed

10    to state a claim upon which relief may be granted under:  Sections 1 and 2 of the Sherman Act;

11    Retaliation – Withholding of Hospital Privileges in Violation of Public Policy; Breach of

12    Contract and Implied Covenant of Good Faith and Fair Dealing; and Interference with

13    Prospective Economic Relations.

14        This motion is brought following the conference of counsel pursuant to the

15    Standing Order of this Court.  Counsel for the parties have agreed that the proposed hearing date

16    for this motion will not cause undue prejudice.

17        This motion is based on this Notice of Motion, the attached Memorandum of

18    Points and Authorities, the pleadings, papers and files in this action, and such other argument as

19    may be presented at or prior to the hearing on this motion.  This motion is also being filed in

20    conjunction with Defendants' Joint Motion to Strike Portions of Plaintiff's First Amended

21    Complaint pursuant to Federal Rule of Civil Procedure 12(f).

22

23

24

25

26

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

1

DATED:　July 3, 2008

2

3　　　　　　　　　　　　　　　　　　BINGHAM McCUTCHEN LLP

4

5　　　　　　　　　　　　　　By:＿＿＿＿＿＿＿＿／s／ Beth McGowen＿＿＿＿＿＿

6　　　　　　　　　　　　　　　　　　　　　BETH McGOWEN
　　　　　　　　　　　　　　　　　　　Attorneys for Defendants
7　　　　　　　　　　　　　　WILLIAM PICHE, PAUL N. BEAUPRE, M.D.,
　　　　　　　　　　　　　ARTHUR W. DOUVILLE, M.D., and KENNETH I.
8　　　　　　　　　　　　　　　　　　　　TAN, M.D.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

　　　　　　　　　　　　　　　　　　　　　　No. 08-CV-01098 RS

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

1          **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    INTRODUCTION**

3          On March 18, 2008, Plaintiff Dr. Richard B. Fox ("Plaintiff") filed suit against

4  defendants Mr. William Pichè, Dr. Paul Beaupre, Dr. Arthur Douville, Dr. Kenneth Tan

5  ("Defendants")[1] and Dr. Mark McConnell, for the purpose of holding them individually liable

6  for a myriad of claims, including violations of Sections 1 and 2 of the Sherman Act; retaliation in

7  violation of public policy; breach of contract and the implied covenant of good faith and fair

8  dealing; and intentional interference with prospective economic relations. As referenced in the

9  First Amended Complaint ("FAC"), Plaintiff does so even though he has been litigating these

10 same claims in a related case[2] against Good Samaritan Hospital LP, Good Samaritan Hospital

11 Medical Staff, Samaritan LLC, and their parent company, HCA, Inc., since 2004.

12         Initiating litigation against Defendants at this late date is nothing more than a

13 belated attempt to add these individuals to the related pending litigation. However, Plaintiff's

14 attempt to litigate these claims in a second federal action fails on the grounds that each of the

15 claims Plaintiff alleges against Defendants is time-barred. Further, even if each of Plaintiff's

16 claims was not time barred, each claim remains subject to this Joint Motion to Dismiss on the

17 grounds that Plaintiff has failed to allege facts sufficient to support each claim therein. As

18 detailed below, these defects are fatal to Plaintiff's FAC, and cannot be cured in any amended

19 pleading. Accordingly, Defendants respectfully request that the Court grant its Joint Motion to

20 Dismiss this action in its entirety, with prejudice.

21

22  _____

23 [1] For purposes of this Motion to Dismiss, any reference to Defendants herein refers only to
Mr. William Pichè, Dr. Paul Beaupre, Dr. Arthur Douville and Dr. Kenneth Tan.

24 [2] By the Order of this Court, the above referenced action has been deemed related to Fox v. Good

25 Samaritan Hospital, *et al.*, Case No. 04-cv-00874 RS. (Docket No. 10).

26

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS
A/72586520.1/2019871-2198710013

## II.    SUMMARY OF ALLEGATIONS[3]

As set forth in the FAC, Plaintiff is a highly skilled pediatric intensive care and pediatric pulmonology physician who held full medical privileges to provide Pediatric Critical Care Services ("PICU Services") at Good Samaritan Hospital ("GSH" or the "Hospital") until 1999. FAC ¶¶ 1 & 10.  Beginning as early as 1997, Plaintiff alleges that there was a movement to change the alternate call coverage rules[4] at GSH.  FAC ¶ 42. Plaintiff contends that this movement, which involved a series of "intricate" procedural actions beginning in 1997 and continuing into 2008 (FAC ¶ 44), was not an attempt to improve patient care, but rather part of a nebulous conspiracy in which Defendants contracted, combined and conspired with one another and with others, including but not limited to GSH, its officers, including Mr. Piché and Dr. Beaupre, HCA, its legal counsel and Dr. McConnell, to deny Plaintiff procedural safeguards and fair procedure required under GSH's Medical Staff Bylaws and the Health Care Quality Improvement Act, 42 U.S.C. § 11101 *et seq.*

Relying on these historical allegations, Plaintiff sets forth eight separate claims for relief in the FAC, in which he seeks to hold Defendants individually liable for conduct occurring as early as 1992, and any harm resulting therefrom.  FAC ¶ 37. In an attempt to state a claim against Defendants, however, Plaintiff alleges that *Defendants only participated in the actions taken from 2004 through 2008.* These actions include:  (1) changing the rules to exclude Plaintiff's alternate call providers in 2004; (2) threatening to deny Plaintiff biennial medical staff

------

[3] The following statement of facts is based on and limited to the facts asserted by Dr. Fox in the FAC.  Although all allegations of material facts are taken as true for purposes of this motion (*Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996) (citations omitted)), Defendants reserve the right to contest these facts for any other purpose in this litigation.

[4] Plaintiff admits that "[a]ll members of the GSH Medical Staff are required to provide the names of alternate physicians who can provide emergency care of their patients in the event that the physician is unable to do so."  FAC ¶ 33.  The requirement at GSH is that members of the medical staff must provide the names and telephone numbers of two other members of the medical staff who have "appropriate" medical staff privileges. FAC ¶ 33.

No. 08-CV-01098 RS

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

1    reappointment altogether in February 2006 if Plaintiff did not sign a non-negotiable HCA

2    Corporate Form Confidentiality and Security Agreement; and (3) in June 2006 simply

3    terminating Plaintiff's medical staff privileges entirely by refusing to send him his biennial

4    reappointment letter. FAC ¶ 45.

5            However, the heart of Plaintiff's claims lies in the allegations beginning as far

6    back as 1992. For the reasons detailed below, Plaintiff has failed to allege sufficient facts to

7    state a claim for each of the eight claims for relief set forth in the FAC, and thus, Plaintiff's FAC

8    should be dismissed in its entirety.

9    **III.    ARGUMENT**

10          **A.    Standard of Review**

11          A complaint should be dismissed for failure to state a claim pursuant to Federal

12   Rule of Civil Procedure 12(b)(6), whenever plaintiff has failed to allege "enough facts to state a

13   claim that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, __

14   U.S. __, 127 S. Ct. 1955, 1965, 1974 (2007) ("[f]actual allegations must be enough to raise a

15   *right to relief above the speculative level . . .*" (emphasis added) (citations omitted)). While a

16   complaint does not need detailed factual allegations to survive a motion to dismiss, a plaintiff

17   must assert enough factual allegations to provide the "grounds" for his "entitlement to relief";

18   labels, conclusions, and a mere formulaic recitation of the elements of a cause of action will not

19   do. *Id.* at 1964-65 (explaining that, on a motion to dismiss, courts are not bound "to accept as

20   true a legal conclusion couched as a factual allegation.") (citing *Papasan v. Allain*, 478 U.S. 265,

21   286 (1986)). Accordingly, where as here, a plaintiff has failed to allege something more than

22   conclusory allegations in his complaint, the complaint should be dismissed. *Id.* at 1966-67

23   (explaining that a district court retains "the power to insist upon some specificity in pleading

24   before allowing a potentially massive factual controversy to proceed.").

25

26

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

**B.      Each Of Plaintiff's Claims Is Barred By The Applicable Statute Of Limitations.**

A motion to dismiss for failure to state a claim lies whenever the facts and dates alleged in the complaint indicate the claim is barred by the applicable statute of limitations. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994). In this instance, each of Plaintiff's claims is time-barred, as the applicable statue of limitations for both his private antitrust damages actions and state law claims runs from the time the cause of action accrued.

**1.      Plaintiff's Antitrust Claims Are Time Barred.**

GSH adopted the identical privilege rule in April 1999, and suspended Plaintiff's pediatric ICU privileges for failure to comply with the rule in June 1999. FAC ¶ 45. Since Plaintiff's injury was thus complete by no later than 1999, and the FAC was not filed until March 2008, his Sherman Act claims are barred by the four year statute of limitations period of 15 U.S.C. § 15b. *See Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) ("A cause of action in antitrust accrues each time a plaintiff is injured by an act of the defendant and the statute of limitations runs from the commission of the act."); *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 338 (1971).

Plaintiff may argue that the alleged conspiracy is continuing in nature, and that a new cause of action thus accrues with each decision to "withhold" or "defer" his pediatric biennial application for PICU privileges. But any such argument fails, since each "withholding" or "deferral" amounts to no more than a reaffirmation of the ongoing policy to require alternate call coverage by providers with identical privileges, and therefore does not restart the limitations period. *See Pace Indus., Inc.*, 813 F.2d at 238 (holding that to restart the statute of limitations, there must be "a new and independent act" in support of the alleged conspiracy "that is not merely a reaffirmation of a previous act" and that "inflict[s] new and accumulating injury on the plaintiff."); *In re Multidistrict Vehicle Air Pollution v. Gen. Motors Corp.*, 591 F.2d 68, 71 (9th

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

1    Cir. 1979) (holding that whether a continuing conspiracy restarts statute of limitations depends

2    on "whether [the plaintiff's] injury was the consequence of multiple wrongs or a single

3    irrevocable and permanent injury"); *David Orgell, Inc. v. Geary's Stores, Inc.*, 640 F.2d 936, 938

4    (9th Cir. 1981) (holding that antitrust claims were time barred where plaintiff's injury flowed

5    from the initial refusal to deal more than four years before it filed suit; subsequent refusals to

6    deal "were forlorn inquiries by one all of whose reasonable hopes had previously been dashed.")

7    (quoting *In re Multidistrict Vehicle Air Pollution*, 591 F.2d at 938).

8            Plaintiff has failed to allege in the FAC that he was injured by a separate overt act

9    by any of the Defendants during the applicable statutes of limitations.  Plaintiff alleges he had

10   full medical privileges at GSH until 1999 when the actions denying privileging began.  *See* FAC

11   ¶ 1.  In 1999, Plaintiff alleges the Hospital "created three new privileges."  FAC ¶ 45.  To obtain

12   these privileges, Plaintiff was required to provide appropriate call coverage to the Hospital.  FAC

13   ¶ 33.  He failed to do so.  FAC ¶ 45.  Accordingly, Plaintiff's application for privileges was

14   deferred with his 1999 application and each reappointment application thereafter, as he persisted

15   in failing to comply with the identical privileges requirement.[5]  FAC ¶¶ 45 & 85.  By his own

16   allegations, Plaintiff admits that Defendants "repeatedly" reaffirmed the initial denial of

17   privileges after each of Plaintiff's requests for reinstatement in "1999, 2000, 2002, 2003, 2004,

18   and 2006."  FAC ¶¶ 3 & 85.  On its face, these allegations preclude Dr. Fox from alleging that

19   any subsequent denial or deferment of his request for privileges amounted to a separate overt act

20   that may restart the statute of limitations.  Accordingly, this failure mandates dismissal of each of

21   Plaintiff's antitrust claims.  *Bell Atlantic Corp.*, 127 S. Ct. at 1966 (explaining that dismissal of

22   

---

23   [5] Each physician who wishes to treat patients at Good Samaritan Hospital must apply to the
     Medical Staff for appointment as a member and for specific clinical privileges within the scope
24   of his or her training and education.  22 Cal. Admin. Code § 70703(a), (b).  The entire
     application process must be repeated every two years.  *Id.* § 70701(a)(7).  Pursuant to state law
25   and hospital procedure, Plaintiff applies for critical care privileges every two years.  *See id.*
     §§ 70701 & 70703.

26   

No. 08-CV-01098 RS

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

1   antitrust claims prior to discovery are particularly warranted when the allegations in a complaint,

2   however true, could not raise a claim of entitlement to relief).

3       **2.    Each of Plaintiff's State Law Claims Is Barred By The Applicable**
        **Statute of Limitations.**
4

5       Each of Plaintiff's claims under state law is also barred by the applicable statute

6   of limitations period.    These state law claims, for "Retaliation - Withholding of Hospital

7   Privileges in Violation of Public Policy" (Sixth Claim for Relief), "Breach of Contract and

8   Implied Covenant of Good Faith and Fair Dealing" (Seventh Claim for Relief), and "Interference

9   with Prospective Economic Relations" (Eighth Claim for Relief) are governed by the two-year

10  limitations period of California Code of Civil Procedure § 339(1). *See Edwards v. Fresno Cmty.*

11  *Hosp.*, 38 Cal. App. 3d 702, 704, 706 (1974) (holding that an action for wrongful denial of

12  hospital privileges falls within the two year period of § 339(1) and that "[i]t is the nature of the

13  right sued upon, not the form of the action . . . that determines the limitations period."); *Spear v.*

14  *Cal. State Auto. Ass'n*, 2 Cal. 4th 1035, 1043 (1992) (explaining that the cause of action for

15  breach of contract accrues at the time of breach, and the statute of limitations begins to run at

16  that time); *McFaddin v. H.S. Crocker Co., Inc.*, 219 Cal. App. 2d 585, 291 (1963) (holding that

17  the applicable statute of limitations for a claim for interference with prospective economic

18  advantage is two years from the date of the commission of the wrong).

19      Each of these claims is premised on the suspension and withholding of Plaintiff's

20  PICU privileges, which were initially suspended in June 1999 for lack of appropriate call

21  coverage — almost *nine years* prior to the filing of the FAC. *See* FAC ¶¶ 109, 118 & 126. Yet,

22  the facts Plaintiff alleges in support of these claims extend back as early as 1992. *See* FAC

23  ¶¶ 105-108 (Retaliation) & 126 (Interference with Prospective Economic Relations). These

24  allegations clearly fall outside of the applicable two year statute of limitation period, and thus

25  may not serve as the basis for Plaintiff's claims. Further, since the subsequent withholding of

26  those same privileges amounts to no more than ongoing adherence to its initial decision, and did

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

1    not cause Plaintiff any new injury, these claims under state law are time barred. Accordingly,

2    Plaintiff's Sixth, Seventh and Eighth Claims for Relief must be dismissed with prejudice.

3         **C.**     **Each Of Plaintiff's Claims Under Sections 1 And 2 Of The Sherman Act**
4                    **Should Be Dismissed On The Grounds That Plaintiff Has Failed To Allege**
                **Sufficient Facts To State A Claim For Relief.**

5            To state a claim for relief under Section 1 of the Sherman Act, Plaintiff is required

6    to prove (1) a contract, combination or conspiracy among two or more independent actors, (2)

7    that unreasonably restrains trade, and (3) effects interstate commerce. *Hilton v. Children's*

8    *Hosp.-San Diego,* 2007 U.S. Dist. LEXIS 16517, *10-11 (S.D. Cal. March 7, 2007); *Paladin*

9    *Assocs. v. Montana Power Co.,* 328 F.3d 1145, 1153 (9th Cir. 2003) (citing *Am. Ad Mgmt. v.*

10   *GTE Corp.,* 92 F.3d 781, 788 (9th Cir. 1996)). Plaintiff has failed to allege sufficient facts in the

11   FAC to support either the first or third elements of his Section 1 Claims, and on that ground each

12   of Plaintiff's Section 1 claims in the FAC (Claims I through IV) should be dismissed with

13   prejudice.

14        **1.**     **Each Of Plaintiff's Claims For Relief Under Section 1 Of The**
15                   **Sherman Act Should Be Dismissed As Plaintiff Failed To Allege A**
                **Contract, Combination, Or Conspiracy Within The Meaning Of**
16                   **Section 1.**

17           To allege an unreasonable restraint of trade in violation of Section 1, Plaintiff

18   must first allege facts sufficient to support a finding of a contract, combination or conspiracy

19   among two or more independent actors. *See Hilton v. Children's Hosp.-San Diego,* 2007 U.S.

20   Dist. LEXIS 16517 (S.D. Cal. 2007). For purposes of the Sherman Act, this requires a plaintiff

21   to allege, at a minimum, "enough factual matter (taken as true) to suggest that an agreement was

22   made." *Bell Atlantic Corp.,* 127 S. Ct. at 1965-66 (explaining that "[a]sking for plausible

23   grounds to infer an agreement does not impose a probability requirement at the pleading stage; it

24   simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence

25   of illegal agreement."). Plaintiff has not alleged any facts in the FAC which would suggest that

26

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

1   such an agreement was made, let alone who was a party to the agreement and when it was made.

2   Instead, Plaintiff relies on conclusory allegations that the parties merely entered into an

3   agreement from 2004 to present. FAC ¶¶ 78, 86, 91 & 95.

4          However, mere "[a]llegations of parallel conduct [by competitors] and a bare

5   assertion of conspiracy will not suffice to state a claim. Without more, parallel conduct does not

6   suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not

7   supply facts adequate to show illegality." *Bell Atlantic Corp.*, 127 S. Ct. at 1966; *In re Graphics*

8   *Processing Units Antitrust Litig.,* 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) (explaining that

9   allegations of conspiracy were "too conclusory to show a plausible entitlement to relief"); *In re*

10  *Ditropan XI Antitrust Litig.,* 2007 U.S. Dist. LEXIS 78423, *11-12 (N.D. Cal. Oct. 11, 2007)

11  (holding that plaintiff did not allege facts that would demonstrate a conspiracy).

12         Moreover, pleadings in which a plaintiff identified "a seven-year span in which

13  the § 1 violations were supposed to have occurred (i.e., '[b]eginning at least as early as February

14  6, 1996, and continuing to the present,' (citation omitted))," but mentioned "no specific time,

15  place, or person involved in the alleged conspiracies," and furnished no clue as to which of the

16  four defendants (much less which of their employees) supposedly agreed, or when and where the

17  illicit agreement took place, failed to set forth the requisite facts to allege a conspiracy. *See Bell*

18  *Atlantic Corp.,* 127 S. Ct. at 1971, n.10 (dismissing Plaintiff's Section 1 claims for failing to

19  allege a conspiracy). Plaintiff's FAC suffers from these precise defects. Specifically, Plaintiff

20  alleges a four year window as to when the Section 1 violations were supposed to have occurred,

21  but does not mention the specific time, place, or individuals who agreed to the alleged

22  conspiracy. While Plaintiff has alleged that each of the Defendants were part of the conspiracy,

23  Plaintiff fails to allege when a meeting of the minds among those actors occurred. Plaintiff's

24  failure to include these allegations in the FAC results in Plaintiff's failure to allege the requisite

25  conspiracy. *Id.* at 1974 (explaining that Plaintiff has failed to nudge his "claims across the line

26  from conceivable to plausible."). On that ground alone, each of Plaintiff's Section 1 Sherman

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

1    Act claims should be dismissed with prejudice.

2    To the extent Plaintiff seeks to rely on allegations of parallel conduct, consciously

3    undertaken by the alleged co-conspirators to allege the requisite conspiracy, such allegations of

4    parallel conduct must be placed in a context that raises a suggestion of a *preceding agreement*,

5    not merely parallel conduct that could just as well be independent action. *Id.* at 1966. Without

6    that further circumstance pointing toward a meeting of the minds, an account of a defendant's

7    commercial efforts remains in neutral territory. An allegation of parallel conduct is thus much

8    like a naked assertion of conspiracy in a Section 1 complaint:  it gets the complaint close to

9    stating a claim, but without some further factual enhancement it stops short of the line between

10   possibility and plausibility of "entitle[ment] to relief." *Id.* at 1966, n.5. *Cf. DM Research, Inc. v.*

11   *College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999).

12
13
       **2.**     **Plaintiff Fails To Allege Facts Sufficient To Prove A Substantial Effect On Interstate Commerce.**

14   As noted in Section III.C above, to state a claim under Section 1, Plaintiff is

15   required to allege facts sufficient to support an inference that Defendants' allegedly unlawful

16   activities either have had or can reasonably be expected to have a substantial effect on interstate

17   commerce. *McClain v. Real Estate Bd. Of New Orleans, Inc.,* 444 U.S. 232, 246 (1980);

18   *Rosenberg v. Healthcorp Affiliates,* 663 F. Supp. 222, 226 (N.D. Ill. 1987) (dismissing a

19   physician's antitrust claims under Sections 1 and 2 of the Sherman Act on the grounds that

20   plaintiff failed to provide a sufficient factual basis so that the court could adequately evaluate the

21   significance of any potential injurious impact on interstate commerce from the alleged activity).

22   Plaintiff has not pled facts alleging the requisite substantial effect on interstate

23   commerce here. Plaintiff's allegations as to the impact of Defendants' acts are limited to the

24   following:

25
26
      Dr. Fox provides medical services to patients in California. He was and is involved in interstate commerce in that he receives patients and significant amounts in payment for his services from

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

1          sources outside of the state of California . . . The physicians who
         are credentialed admit and treat patients and receive significant
2          payments from sources outside of the state of California.
         Credentialing activity and treatment also affect interstate
3          commerce.

4  FAC ¶¶ 8 & 9. *See also* FAC ¶¶ 77-103 (alleging violations of Sections 1 and 2 of the Sherman

5  Act). Plaintiff's allegations fall short of the "substantial effect on interstate commerce" that

6  Plaintiff is required to allege. *Rosenberg,* 663 F. Supp. at 225; *Seglin v. Esau* 769 F.2d 1274,

7  1279-80 (7th Cir. 1985) (dismissing plaintiff's Sherman Act claims where plaintiff alleged that

8  defendants provided psychiatric services to patients who traveled from out of state, that they

9  purchased equipment in interstate commerce and that they received insurance payments through

10  interstate commerce); *Marrese v. Interqual, Inc.,* 748 F.2d 373, 383 (7th Cir. 1984) (denying

11  motion to dismiss where plaintiff provided, among other details, extensive details regarding the

12  percentage of patients from outside the state which plaintiff treated at the hospital, the percentage

13  of hospital patients who were from outside the state, and the approximate amount of annual

14  revenues, fees and purchases received from out of state).

15         These cases illustrate the required pleading standard and Plaintiff's clear failure to

16  meet it. To sustain his claim, Plaintiff needed to allege, at a minimum, the number or percentage

17  of patients he treated from outside the state and the fees and purchases received from out of state.

18  Bare allegations that he "is involved in interstate commerce in that he receives patients and

19  significant amounts in payment for his services from sources outside of the state of California"

20  are insufficient for purposes of stating a claim here. On this ground alone, Plaintiff's Section 1

21  Sherman Act claims should be dismissed with prejudice.

22        **D.**     **Plaintiff's Claims Under Section 2 Of The Sherman Act Should Be**
23            **Dismissed.**

       In Plaintiff's Fifth Claim for Relief, he alleges a violation of Section 2 of the
24
Sherman Act against all Defendants under a monopolization and attempt to monopolize theory.
25
Seemingly, it appears that Plaintiff may also allege a Section 2 claim under a conspiracy to
26

13

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

1    monopolize theory. Each of these claims fail for the reasons detailed below.

2                 **1.    Plaintiff Fails To State A Claim For Monopolization.**

3            To state a claim for monopolization under Section 2 of the Sherman Act, Plaintiff

4    must allege: (1) that Defendants possess monopoly power in the relevant market; (2) willful

5    acquisition or maintenance of that power; and (3) causal antitrust injury. *Forsyth v. Humana,*

6    *Inc.,* 114 F.3d 1467, 1475 (9th Cir. 1997). Plaintiff is further required to define the relevant

7    market. *Id.* Monopoly power exists where a company has the power to control prices or exclude

8    competition. *Kinderstart.com v. Google, Inc.,* 2007 U.S. Dist. LEXIS 22637, *33 (N.D. Cal.

9    March 16, 2007).

10          In this instance, Plaintiff alleges that NorCal PICU possesses monopoly power in

11    the relevant market: "the hospital's contracted group would achieve, and they did in fact achieve

12    and maintain a monopoly with over a 90% market share of the relevant market for PICU services

13    at GSH from 2004 to the present." FAC ¶ 100. NorCal PICU, which entered into a contract

14    with HCA to provide 24/7 coverage for PICU patients at GSH in 1999 through 2004, is the only

15    competing PICU Services provider at GSH. FAC ¶¶ 15 & 24. Dr. McConnell, as the owner of

16    NorCal PICU, is the only defendant who provides PICU services at GSH. FAC ¶¶ 2 & 15.

17    Because "PICU services represent a separate product market from the other medical services,"

18    Dr. McConnell is the only defendant with monopoly power in the relevant market, namely, PICU

19    Services. FAC ¶ 29. Plaintiff does not allege that any of the other named Defendants,

20    specifically, Mr. Pichè, Dr. Beaupre, Dr. Douville or Dr. Tan possess monopoly power in that

21    market. *See* FAC ¶¶ 98-103. Nor can he. Mr. Pichè and Dr. Beaupre are both employees of the

22    Hospital, as CEO and COO, respectively. FAC ¶¶ 11 & 12. Dr. Douville is a physician under

23    contract to provide emergency room services, not PICU services. FAC ¶ 13. Finally, Dr. Tan is

24    a partner in the Pediatrix Medical Group, which contracts with HCA for the provision of

25    neonatal intensive care services at GSH, not PICU services. FAC ¶¶ 14 & 23. Where Plaintiff

26

1    has failed to allege any facts relating to market power as to these Defendants, Plaintiff has failed

2    to state a claim.  On this ground alone, Plaintiff's Fifth Claim for Relief should be dismissed as

3    to each of these Defendants.

4              Plaintiff's claim should also be dismissed on the grounds that Plaintiff has failed

5    to allege facts sufficient to show that the alleged conduct had an effect on interstate commerce.

6    For the reasons set forth in Section III.C.2 above, Plaintiff's claims should be dismissed.

7              **2.    Plaintiff Fails To State A Claim For Attempted Monopolization.**

8              To state a claim for attempted monopolization, Plaintiff must allege (1) predatory

9    or anticompetitive conduct; (2) a specific intent to monopolize; and (3) a dangerous probability

10   of achieving monopoly power in the relevant market.  *Cascade Health Solutions v. PeaceHealth,*

11   502 F.3d 895, 904 (9th Cir. 2007) (citations omitted); *Kinderstart.com,* 2007 U.S. Dist. LEXIS

12   22637, at *13.  In order to succeed on either a monopolization or attempt to monopolize claim,

13   Plaintiff must establish the relevant product and geographic markets in which he competes with

14   the alleged monopolizers.  *See, e.g. United States v. Grinnell Corp.,* 384 U.S. 563, 571-73 (1966)

15   (dismissing defendant from the action on the ground that defendant does not compete in any

16   fashion with plaintiffs); *Smith v. N. Mich. Hosp., Inc.,* 703 F.2d 942, 954-55 (6th Cir. 1983).

17   Here, as discussed in Section III.D.1, Plaintiff has failed to state facts in support of any of the

18   elements set forth above.  *See* FAC ¶¶ 98-103.  Accordingly, Plaintiff's claim should be

19   dismissed.

20             **3.    Plaintiff Fails To State A Claim For Conspiracy To Monopolize.**

21             It is unclear whether Plaintiff intends to allege a claim based on a conspiracy to

22   monopolize theory.  This vagueness itself is fatal to any such implication.  However, Defendants

23   address such a claim for the purpose of rebutting each potential theory of liability under Section

24   2 of the Sherman Act.  To prove a conspiracy to monopolize in violation of Section 2, Plaintiff

25   must show four elements:  (1) the existence of a combination or conspiracy to monopolize; (2) an

26

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

1    overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal

2    antitrust injury. *Paladin Assocs. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003)

3    (citing *United States v. Yellow Cab Co.*, 332 U.S. 218, 224-225, 91 L. Ed. 2010, 67 S. Ct. 1560

4    (1947)). To the extent Plaintiff intends to assert such a claim, it fails as to all Defendants for the

5    same reasons set forth in section III.C.1 above (failure to allege a conspiracy). Accordingly, any

6    such claim should be dismissed with prejudice.

7        **E.    Plaintiff's State Law Claims**

8            **1.    Plaintiff Has Failed To Allege A Claim For Retaliation.**

9            To state a claim under California Business and Professions Code Section 2056,

10   Plaintiff must allege that Defendants retaliated against him for advocating for medically

11   appropriate health care for patients. *See* Cal. Bus. & Prof. Code § 2056; *Khajavi v. Feather*

12   *River Anesthsia Med. Group*, 84 Cal. App. 4th 32, 49 (2000) (finding that "the purpose [of

13   section 2056] is to provide protection against retaliation"). In the FAC, Plaintiff asserts that: "In

14   2006, when Dr. Fox declined to sign the HCA corporate loyalty oath requiring him to put HCA's

15   profits ahead of his patients, Dr. Fox stated that to do so would interfere with his duty to

16   advocate on behalf of his patients."[6] FAC ¶ 108. For purposes of this Motion, Defendants do

17   not contest that such an allegation constitutes "advocating for medically appropriate health care

18   for patients." However, even if Defendants accept that allegation as being true for purposes of

19   this Motion, Plaintiff fails to allege the requisite retaliation by each of the Defendants for such

20   patient advocacy.

21           In the FAC, Plaintiff alleges that Defendants retaliated against him by entering

22   "into an ongoing civil conspiracy among themselves and with others . . . with the common plan

23   _____

24   [6] Plaintiff makes other allegations concerning purported retaliation for reporting violations of
     patient rights that occurred in 1996 and 1999. *See* FAC ¶¶ 106 & 107. Defendants do not
25   address those allegations here as they fall outside of the applicable two year statute of limitations
     and are therefore time barred for purposes of stating a claim for relief. *See supra* Section III.B.2.

26

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

1    and intent to exclude Dr. Fox from practice at GSH and to otherwise damage Dr. Fox by

2    suspending and withholding his PICU privileges, in retaliation for Dr. Fox's advocacy on behalf

3    of patients' rights, advocacy protected under *Cal. Bus. & Prof. Code § 2056*." FAC ¶ 109. Yet,

4    by his own account, Plaintiff also alleges that "On January 25, 2008, GSH's CEO Pichè

5    responded to Dr. Fox's letter of January 12 to Dr. Jackson. He stated that he wished to inform

6    Dr. Fox that GSH's Board of Trustees had reappointed Dr. Fox to the medical staff at its meeting

7    of June 28, 2006. He further stated that Dr. Fox's request for pediatric ICU privileges had again

8    been, 'deferred pending your provision of appropriate alternate call coverage.'" FAC ¶ 67.

9    Thus, Plaintiff held the same level of privileges prior to this act of patient advocacy, as he held

10   immediately thereafter (FAC ¶¶ 1, 3 & 45) and Mr. Pichè's letter simply restates prior grounds

11   (lack of appropriate coverage) for deferral of privileges. FAC ¶ 67. Moreover, Plaintiff does not

12   allege any other specific act of retaliation by any individual Defendant, other than this

13   amorphous conspiracy allegedly done "with the common plan and intent to exclude Dr. Fox from

14   practice at GSH and to otherwise damage Dr. Fox by suspending and withholding his PICU

15   privileges." FAC ¶ 109.

16          Defendants never terminated Plaintiff's privileges nor penalized Plaintiff in

17   response to this alleged instance of patient advocacy. The status quo prevailed and was

18   preserved due to Plaintiff's failure to provide adequate alternate call coverage. Accordingly,

19   Plaintiff has failed to allege the requisite retaliatory conduct needed to state a claim. This claim

20   must be dismissed.

21          **2.    Plaintiff Has Failed To Allege A Claim For Breach Of Contract Or
22                  Breach Of The Implied Covenant Of Good Faith And Fair Dealing.**

23                  **a.    Plaintiff Has Failed To Allege The Existence Of A Contract.**

24          To establish a breach of contract, Plaintiff must first allege that a valid contract

25   existed. *Acoustics, Inc. v. Trepte Construction Co.*, 14 Cal. App. 3d 887, 913 (1971). This

26   requires Plaintiff to allege facts establishing, at a minimum, that Plaintiff and Defendants entered

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

1   into, and were parties to, a valid contract. *Id.*[7]; *Janda v. Madera Cmty. Hosp.*, 16 F. Supp. 2d

2   1181, 1186 (E.D. Cal. 1998) ("[i]t is essential to the existence of a contract that there should be:

3   (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause

4   or consideration."); *see* Cal. Civ. Code § 1558 (the parties to the contract must be identifiable).

5           Plaintiff's own allegations defeat his breach of contract claim.  In the FAC,

6   Plaintiff does not allege a contract between himself and Defendants Pichè and Beaupre.  *See*

7   *generally* FAC ¶¶ 114-122.  Rather, he alleges that his applications for privileges "created

8   express contracts with *the Hospital*," and that an implied-in-fact contract arose with Plaintiff

9   "under which *the Hospital* agreed to abide by the Hospital Bylaws and the Medical Staff

10  Bylaws." FAC ¶¶ 116 & 115 (emphasis added).[8]  Where Plaintiff has failed to allege that either

11  Defendant Pichè or Defendant Beaupre were parties to the contract, Plaintiff has, by his own

12  allegations, disclosed an absolute bar to recovery and therefore has effectively pled himself out

13  of court.  *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n.1 (9th Cir. 1997) ("A plaintiff

14  may plead herself out of court.  If the pleadings establish facts compelling a decision one way,

15  _____

16  [7] To state a claim for breach of contract, Plaintiff must also allege:  (1) the existence of a
    contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and
17  (4) damages to plaintiff therefrom. *Acoustics, Inc. v. Trepte Construction Co.*, 14 Cal. App. 3d
    887, 913 (1971).

18  [8] In any event, medical staff bylaws, under the authority of which each of Dr. Fox's applications
19  was considered, do not constitute a contract. *O'Byrne v. Santa Monica-UCLA Medical Ctr.*, 94
    Cal. App. 4th 797, 810 (2001) (holding that under California contract law, medical staff bylaws
20  adopted pursuant to California Administrative Code Section 70703(b), "do not *in and of*
    *themselves constitute a contract* between a hospital and a physician on its medical staff," as
21  neither party conferred on the other any more than what was required by law (emphasis added)).
    Moreover, Plaintiff fails to allege facts sufficient to support a finding that the Hospital Bylaws
22  constitute a contract.  Plaintiff himself alleges that the Hospital's written bylaws are "in
    accordance with legal requirements and its community responsibility," as required by California
23  Administrative Code Section 70701. *Compare* FAC ¶ 114, *with* 22 Cal. Admin. Code § 70701.
    *See also Janda v. Madera Cmty. Hosp.*, 16 F. Supp. 2d 1181, 1188 (E.D. Cal. 1998) (holding that
24  the hospital bylaws constitute a contract because they impose additional duties that exceed the
    scope of California's requirements).  Therefore, the Medical Staff Bylaws and Hospital Bylaws
25  cannot constitute a contract and neither the Hospital, nor Defendants Pichè and Beaupre, can be
    held individually liable for an alleged breach thereof.

26

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

1    that is as good as if depositions and other expensively obtained evidence on summary judgment

2    establishes identical facts." (internal citations omitted)).

3           To the extent Plaintiff seeks to hold Defendants Pichè and Beaupre liable on a

4    contract purportedly entered into by the Hospital, this argument fails for two reasons. First, as a

5    matter of law, Defendant Pichè and Defendant Beaupre cannot be personally liable for the

6    Hospital's contracts even though they may act as agents of the corporation. *See* RESTATEMENT

7    (SECOND) OF AGENCY § 328 ("An agent, by making a contract only on behalf of a competent

8    disclosed principal or partially disclosed principal whom he has power so to bind, does not

9    thereby become liable for its nonperformance."); *Swartz v. KPMG, LLC*, 401 F. Supp. 2d 1146,

10    1154 (W.D. Wash. 2004) (dismissing a claim for breach of contract because an agent is not liable

11    for the contractual duties of its principal). Second, as alleged in the FAC, Plaintiff is pursuing

12    liability against Defendants in their individual capacities. *See* FAC ¶ 74 ("Each of the

13    defendants . . . acted in his own economic and other self-interests, not within the scope of his

14    duties as an agent, employee or manager of HCA, GSH or other GSH entity and is individually

15    liable for his acts."). Where the alleged contract exists only between the Hospital and Plaintiff,

16    Defendants Pichè and Beaupre cannot be held personally liable. For these reasons, Plaintiff's

17    Seventh Claim for Relief should be dismissed.

18           **b.**     **An Express Contractual Relationship Is Required To State A**

19                      **Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.**

20           The prerequisite for any action for breach of the *implied covenant of good faith*

21    *and fair dealing* is the existence of a contractual relationship between the parties, because the

22    covenant itself is an implied term in the contract. *Smith v. City & County of San Francisco*, 225

23    Cal. App. 3d 38, 49 (1990). If there is no underlying contract, there can be no duty of good faith

24    between the parties. *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 684 (1988). As noted in

25    Section III.E.1, Plaintiff has failed to allege the requisite contractual relationship with

26

19               No. 08-CV-01098 RS

1    Defendants Pichè and Beaupre. Moreover, the bylaws do not constitute a contract. *See supra*

2    note 9. Therefore, Plaintiff's claim for breach of the implied covenant of good faith and fair

3    dealing must be dismissed.

4          **3.    Plaintiff Has Failed To Allege A Claim For Interference With**

5                **Prospective Economic Relations.**

6          To state a claim for Intentional Interference with Prospective Economic Relations,

7    Plaintiff must allege that: (1) Plaintiff had an economic relationship with a probability of future

8    economic benefit; (2) Defendants knew about Plaintiff's economic relationship; (3) Defendants'

9    conduct was substantially certain to interfere with Plaintiff's relationship; (4) Defendants'

10   conduct was independently unlawful; (5) Defendants disrupted Plaintiff's relationship;

11   (6) Plaintiff suffered actual injury; and (7) Defendants' conduct was a substantial factor in

12   causing the disruption. *Buckaloo v. Johnson*, 14 Cal.3d 815, 827 (1975)

13         Plaintiff has failed to allege sufficient facts in support of this third element, which

14   requires Plaintiff to allege facts demonstrating that Defendants' conduct was unlawful in some

15   way beyond the fact of the interference itself. *Della Penna v. Toyota Motor Sales, U.S.A.*, 11

16   Cal. 4th 376, 393 (1995); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153,

17   1159 (2003) (holding that the act must be wrongful by "some constitutional, statutory,

18   regulatory, common law, or other determinable legal standard," rather than merely the product of

19   improper, but lawful, purpose or motive); *Gemini Aluminum Corp. v. Cal. Custom Shapes*, 95

20   Cal. App. 4th 1249, 1255 (2002) (holding that allegations of unethical conduct or conduct that

21   violated vague industry standards are not sufficient to be considered independently unlawful).

22         In the FAC, Plaintiff's allegations as to independently wrongful conduct are

23   insufficient. The only conduct Plaintiff contends is unlawful is that which Defendants are

24   required to do by state law; namely, evaluation of staff applications and credentials,

25   appointments, reappointments, and assignment of clinical privileges. 22 Cal. Admin. Code

26   §§ 70701 & 70703. Such conduct is not unlawful, and labeling such activities as being

No. 08-CV-01098 RS

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

1    "unlawful" does not make them so.  Further, Plaintiff has not alleged any facts demonstrating:

2    that the denial or "withholding" or "deferral" of his PICU privileges; or "interference with

3    Dr. Mendoza's application for PVM privileges"; or adoption of the "sham" board prepared

4    requirement, or denial of privileges or reappointment (FAC ¶ 126), violates some constitutional,

5    statutory, regulatory, or common law standard.  To the extent Plaintiff seeks to rest on his

6    allegation of an ongoing civil conspiracy as the requisite independently unlawful activity,

7    Plaintiff again fails to state a claim, as discussed in Section III.C.1 above, to allege facts

8    sufficient to plead the requisite conspiracy.  FAC ¶ 127.

9        Plaintiff's claim also fails on the additional ground that he did not sufficiently

10   allege facts demonstrating that he had an "economic relationship with a probability of future

11   economic benefit" with his "Referral Sources."  Rather, Plaintiff's allegations are limited to the

12   fact that Defendants disrupted patient referrals from his Referral Sources.  FAC ¶¶ 124 & 127.

13   To state a claim for relief, however, Plaintiff must allege that an actual economic relationship is

14   disrupted, not merely a hope of future transactions. *Janda*, 16 F. Supp. 2d at 1190 (holding that

15   the pleading was "speculative and insufficient" as to future lost patients because plaintiff must

16   establish an actual economic relationship, not merely a hope of future transactions).  Plaintiff

17   fails to allege any facts as to the specific probability of patient referrals he expected to receive

18   from his Referral Sources, as he does not even allege either the quantity or frequency of those

19   prospective referrals. *See* FAC ¶¶ 127 & 128.  Thus, Plaintiff has failed to allege the required

20   probability of future economic benefit. *See Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App.

21   3d 590, 619-20 (1989) (holding that plaintiff physician, who alleged that another physician

22   "actually disrupted" an economic relationship, failed to state a claim because there was no

23   allegation that plaintiff actually lost patients); *Cinebase Software, Inc. v. Media Guaranty Trust,*

24   *Inc.*, 1998 WL 661465, *9 (N.D. Cal. Sept. 22, 1998) ("Plaintiff's claim includes no facts that

25   would support an allegation that it had existing economic relationships that were damaged by the

26   defendants").  Because these potential patients are merely "hypothetical" or "speculative,"

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013

1   Plaintiff's allegations regarding the relationship with his Referral Sources does not have the

2   required "probability of future economic benefit."  Accordingly, Plaintiff's Eighth Claim for

3   Relief should be dismissed.

4   I.      CONCLUSION

5               For the foregoing reasons, Defendants respectfully request that this Court dismiss

6   Plaintiff's First Amended Complaint in its entirety, with prejudice.

7

    DATED:  July 3, 2008
8
                                        BINGHAM McCUTCHEN LLP
9

10

11                                      By:_____/s/ Beth McGowen_____

12                                              BETH McGOWEN
                                            Attorneys for Defendants
13                                     WILLIAM PICHE, PAUL N. BEAUPRE, M.D.,
                                      ARTHUR W. DOUVILLE, M.D., and KENNETH I.
14                                              TAN, M.D.

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' NOTICE OF MOTION AND JOINT MOTION TO DISMISS

A/72586520.1/2019871-2198710013