1    BINGHAM MCCUTCHEN LLP
     ROSS E. CAMPBELL (SBN 75998)
2    *ross.campbell@bingham.com*
     BETH McGOWEN (SBN 148747)
3    *beth.mcgowen@bingham.com*
     1900 University Avenue
4    East Palo Alto, CA  94303-2223
     Telephone:  (650) 849-4400
5    Facsimile:  (650) 849-4800

6    DAVID C. HALL (*pro hac vice*)
     *dhall@hpslaw.com*
7    HALL PRANGLE & SCHOONVELD, LLC
     200 South Wacker Drive, Suite 3300
8    Chicago, Illinois 60606
     Telephone:  (312) 267-6201
9    Facsimile:  (312) 345-9608

10   Attorneys for Defendants
     WILLIAM PICHÈ, PAUL N. BEAUPRE, M.D.,
11   ARTHUR W. DOUVILLE, M.D., AND KENNETH I.
     TAN, M.D.

12

13                  UNITED STATES DISTRICT COURT

14               NORTHERN DISTRICT OF CALIFORNIA

15                       SAN JOSE DIVISION

16

17   RICHARD B. FOX, M.D.,                 | No. 08-CV-01098 RS

18              Plaintiff,                  | DEFENDANTS' REPLY TO JOINT
          v.                                | MOTION TO DISMISS PURSUANT
19                                          | TO FEDERAL RULE OF CIVIL
     WILLIAM PICHÈ, PAUL N. BEAUPRE, M.D.,  | PROCEDURE 12(b)(6)
20   ARTHUR W. DOUVILLE, M.D., MARK S.
     MCCONNELL, M.D., AND KENNETH I. TAN,   |
21   M.D.                                   | Date:     August 20, 2008
                                            | Time:     9:30 a.m.
22              Defendants.                 | Place:    Courtroom 4
                                            | Judge:    Hon. Richard Seeborg
23

24

25

26

                                                    No. C-04-00874 RMW

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................ 2

II.     STANDARD OF REVIEW .............................................................................. 2

III.    ARGUMENT .................................................................................................. 3

    A.    Each Of Plaintiff's Antitrust And State Law Claims Are Barred By The
        Applicable Statutes of Limitation ........................................................... 3

        1.    Plaintiff's Antitrust Claims Are Time Barred .............................. 3

        2.    Plaintiff's State Law Claims Are Time Barred ............................ 4

    B.    Plaintiff's Section 1 Sherman Act Claims Should Be Dismissed ...................... 6

        1.    Each Of Plaintiff's Claims Should Be Dismissed Because Plaintiff
            Has Failed To Plead A Conspiracy .............................................. 6

        2.    Plaintiff's Failure To Allege The Requisite Effect on Interstate
            Commerce Is Fatal To Plaintiff's Section 1 Antirust Claims .................... 7

    C.    Plaintiff Has Failed To State A Claim Under Section 2 Of The Sherman
        Act .................................................................................................... 8

    D.    Plaintiff's Failure To Allege Sufficient Facts Requires Dismissal Of Each
        Of Plaintiff's State Law Claims ............................................................. 8

        1.    Plaintiff Has Failed To Allege A Claim For Retaliation ............................ 8

        2.    Plaintiff Has Failed To Allege Either A Breach Of Contract Or A
            Breach Of The Implied Covenant Of Good Faith and Fair Dealing .......... 9

        3.    Plaintiff Has Failed To Allege A Claim For Interference With
            Prospective Economic Relations ............................................... 13

IV.    CONCLUSION .............................................................................................. 15

DEFENDANTS' REPLY TO JOINT MOTION TO DISMISS

# TABLE OF AUTHORITIES

Page

Cases

Ascherman v. St. Francis Mem'l Hosp., 45 Cal. App. 3d 507 (1975) ........................................ 11

Asia Investment Co. v. Borowski, 133 Cal. App. 3d 832 (1982) ................................................ 14

Assoc. Contractors of Cal., Inc. v. Carpenters, 459 U.S. 519 (1983) ........................................ 6

Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007) .................................. 1, 2, 5

Blank v. Kirwan, 39 Cal. 3d 311 (1985) .................................................................................... 14

Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101 (7th Cir. 1984) .................................. 6, 13

Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371 (1990) ............................. 10

Cates Constr., Inc. v. Talbot Partners, 21 Cal. 4th 28 (1999) .................................................. 10

Cipriotti v. Bd. of Dir., 144 Cal. App. 3d 144 (1983) ............................................................... 11

Columbia Steel Casting Co. v. Portland General Elec. Co., 111 F.3d 1427 (9th Cir. 1996) .................................................................................................................... 2

Elam v. College Park Hosp., 132 Cal. App. 3d 332 (1982) ....................................................... 11

Ennix v. Stanten, 2008 WL 1902714, (N.D. Cal. April 28, 2008) ............................................. 9

Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d 590 (1989) ........................................ 13

Foley v. Interactive Data Corp., 47 Cal. 3d 654 (1998) ........................................................... 10

Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85 (1995) ............................................ 10

Harrell v. 20th Century Ins. Co., 934 F.2d 203 (9th Cir. 1991) ................................................. 8

Hennegan v. Pacifico Creative Serv., Inc., 787 F.2d 1299 (9th Cir. 1986) ................................ 2

Hotel & Rest. Employees Union v. Francesco's B. Inc., 104 Cal. App. 3d 962 (1980) .................................................................................................................... 14

In re Multidistrict Vehicle Air Pollution, 591 F.2d 68 (9th Cir. 1979) .................................... 2, 3

In re Pomona Valley Medical Group, Inc., 476 F.3d 665 (9th Cir. 2007) .................................. 8

Janda v. Madera Cmty Hosp., 16 F. Supp. 2d 1181 (E.D. Cal. 1998) .......................... 8, 9, 13, 14

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

Livett v. F.C. Fin. Assoc., 124 Cal. App. 3d 413 (1981) .................................................................. 4

4

Miller v. Eisenhower Med. Ctr., 27 Cal. 3d 614 (1980) .................................................................. 11

5

O'Byrne v. Santa Monica-UCLA Medical Ctr., 94 Cal. App. 4th 797 (2001) ...................... 9, 10

6

Pace Indus., Inc. v. Three Phoenix Co., 813 F.2d 234 (9th Cir. 1997) .......................................... 2

7

People v. Zamora, 18 Cal. 3d 538 (1976) ................................................................................ 4, 5

8

Starker v. U.S., 602 F.2d 1341 (9th Cir. 1979) ............................................................................ 6

9

Summit Health, Ltd. v. Pinhas, 500 U.S. 322 (1991) ................................................................ 6, 7

10

Swartz v. KPMG, LLC, 401 F. Supp. 2d 1146 (W.D. Wash. 2004) ............................................ 12

11

Tietz v. Los Angeles Unified Sch. Dist., 238 Cal. App. 2d 905 (1965) ........................................ 8

12

Wyatt v. Union Mortgage Co., 24 Cal. 3d 773 (1979) ...................................................... 3, 4, 7, 12

13

Statutes

14

22 Cal. Admin. Code §§ 70701, 70703 ........................................................................ 10, 11, 13

15

Cal. Bus. & Prof. Code § 2056 ...................................................................................................... 8

16

Cal. Civ. Code § 1550 .................................................................................................................... 9

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' REPLY TO JOINT MOTION TO DISMISS

1    I.    **INTRODUCTION**

2              In his Opposition to Defendants' Joint Motion to Dismiss Pursuant to Federal

3    Rule of Civil Procedure 12(b)(6) ("Motion"), Plaintiff Richard B. Fox, M.D. ("Plaintiff")

4    provides lengthy argument as to why this Court should overlook the glaring deficiencies of the

5    First Amended Complaint ("FAC"). However, Plaintiff's explanation is unavailing, as no such

6    justification can adequately compensate for Plaintiff's failure to state a claim for relief against

7    Defendants Mr. Pichè, and Drs. Beaupre, Douville, and Tan (collectively, "Defendants"). To

8    survive this Motion, Plaintiff is required to demonstrate that he has alleged sufficient facts

9    against these Defendants, in their individual capacities, to sustain his antitrust and state law

10   claims. Plaintiff has failed to do so.

11             The fact that Plaintiff has not done so, despite having litigated against the

12   Hospital in a variety of actions over the past seven years, is telling. Plaintiff did not allege the

13   requisite facts because he simply cannot do so. Plaintiff's reliance on the Orders issued in the

14   related case (against the Hospital and other related corporate entities), without authority, and for

15   the purpose of circumventing his responsibility to adequately plead his claims here, is wholly

16   improper. Moreover, such orders cannot surmount the deficiencies in the FAC. Where Plaintiff

17   has not alleged the necessary facts to survive this Motion and has demonstrated an inability to

18   cure such defects by further amendment, Defendants respectfully request that the FAC be

19   dismissed, with prejudice.

20   II.    **STANDARD OF REVIEW**

21             Plaintiff suggests that *Bell Atlantic* has no impact on this case. Plaintiff is

22   incorrect. *Bell Atlantic* clearly retired *Conley's* "'no set of facts' language" on the grounds that

23   such language "is best forgotten as an incomplete, negative gloss on an accepted pleading

24   standard." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1969 (2007). The *Bell*

25   *Atlantic* Court replaced *Conley's* interpretive language with the following: "we do not require

26   heightened fact pleading of specifics, but only enough facts to state a claim to relief that is

1

DEFENDANTS' REPLY TO JOINT MOTION TO DISMISS

1  plausible on its face." *Id.* at 1974. The rules established by *Bell Atlantic* govern this case and

2  therefore require dismissal of the FAC.

3  **III.    ARGUMENT**

4       **A.    Each Of Plaintiff's Antitrust And State Law Claims Are Barred By The**
         **Applicable Statutes of Limitation.**
5

6            **1.    Plaintiff's Antitrust Claims Are Time Barred.**

7            The injury triggering the statue of limitations for Plaintiff's antitrust claims

   accrued in 1999, when GSH adopted the identical privileges rule and then suspended Plaintiff's
8
   pediatric ICU privileges for failure to comply with the rule. FAC ¶ 45; *Pace Indus., Inc. v. Three*
9
   *Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1997) ("A cause of action in antitrust accrues each time
10
   a plaintiff is injured by an act of the defendant and the statute of limitations runs from the
11
   commission of the act."). Plaintiff seeks to avoid the fact that his claims are time-barred by
12
   arguing that a new and independent act in support of the conspiracy occurred, which restarted the
13
   statute of limitations. Plaintiff's argument is without merit.
14
            To restart the statute of limitations, there must be a "new and independent act" in
15
   support of the alleged conspiracy "that is not merely a reaffirmation of a previous act" and that
16
   "inflict[s] new and accumulating injury on the plaintiff." *See Pace Indus.*, 813 F.2d at 237.
17
   Whether a new act restarts the statute of limitations depends on "whether [the plaintiff's] injury
18
   was the consequence of multiple wrongs or a single irrevocable and permanent injury." *In re*
19
   *Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 71 (9th Cir. 1979).[1]
20
            Plaintiff has not alleged a new and independent act that warrants the restarting of
21

22  _____

23  [1] The cases Plaintiff cites confirm this standard. *See Columbia Steel Casting Co. v. Portland*
    *General Elec. Co.*, 111 F.3d 1427 (9th Cir. 1996) (finding that the defendant's refusal to deal
24  was not a mere reaffirmation of the agreement to stop competing because that agreement was not
    "a permanent and final decision that controlled the later act."); *Hennegan v. Pacifico Creative*
25  *Serv., Inc.*, 787 F.2d 1299 (9th Cir. 1986) (finding that the alleged actions outside the limitations
    period "did not immediately and permanently destroy [the plaintiff's] business.").
26

2

1    the limitations period. Defendants' decision to withhold Plaintiff's privileges was "irrevocable,

2    immutable, permanent and final" in 1999 when the Hospital first deferred his 1999 application

3    for privileges because of his failure to comply with the identical privileges requirement. FAC

4    ¶ 45; *In re Multidistrict Vehicle Air Pollution*, 591 F.2d at 71. Since then, Plaintiff as required

5    by state law, reapplies for privileges (designating inappropriate call coverage) every two years.

6    This, in turn, requires Defendants to reaffirm the initial denial of privileges every two years, as

7    Plaintiff repeatedly designates inappropriate call coverage. Plaintiff has done so for the past

8    eight years (FAC ¶¶ 3, 45, 85), regardless of the fact that the rule has not substantively changed

9    since 1999 to present. FAC ¶¶ 45, 85. In light of state law reappointment requirements, and the

10    fact that the rule remains in effect to date, this cycle will continue indefinitely.

11            The alleged clarification of the rule "requiring that applicants for the PICU

12    privileges must be 'either board certified or board prepared' in Pediatric Cricical [*sic*] Care

13    Medicine" and any subsequent application thereof (Opp. at 11-12), does not constitute a new and

14    independent act warranting restarting the statute of limitations. The fact remains that

15    Drs. McCracken and Dahlstrom were not appropriate call coverage before 2004, and certainly

16    were not appropriate call coverage after 2004. Accordingly, Plaintiff cannot contend that the

17    denial of Plaintiff's privileges again in 2004 constituted a new act that restarted the limitations

18    period. Where each withholding and deferral of Plaintiff's privileges, at the time of the

19    regulatory required reappointment, amounted to no more than a reaffirmation of the ongoing

20    policy to require identical alternate call coverage, Plaintiff has failed to allege a new and

21    independent act that would restart the limitations period. Accordingly, Plaintiff's antitrust claims

22    are time-barred.

23            **2.**    **Plaintiff's State Law Claims Are Time Barred.**

24            The "last overt act doctrine" holds that the statute of limitations does not begin to

25    run until the final act in furtherance of the conspiracy has been committed. *Wyatt v. Union*

26    *Mortgage Co.*, 24 Cal. 3d 773, 786 (1979). In order to determine what conduct may constitute a

3

1    last overt act, California courts have recognized that a court must first define the nature and

2    scope of the particular conspiracy, including the "substantive offense which is the primary object

3    of the conspiracy," before it can determine whether an act is committed in furtherance of the

4    conspiracy. *See Livett v. F.C. Fin. Assoc.*, 124 Cal. App. 3d 413, 419 (1981). Once an offense is

5    completed, the statute of limitations on the conspiracy commences running, and subsequent

6    conduct related to the conspiracy does not constitute overt acts sufficient to recommence the

7    statutory period. *See People v. Zamora*, 18 Cal. 3d 538, 560 (1976).[2]

8           Plaintiff claims in his Opposition that "Dr. Fox plainly alleges that there is

9    ongoing conduct by some or all defendants pursuant to these conspiracies extending right up to

10    the present time." Opp. at 13. However, Plaintiff does not cite to any specific paragraph in the

11    FAC upon which he relies. *See id.* Since there are no such allegations, Plaintiff has simply

12    failed to allege a "last overt act" which would restart the limitations period within the past two

13    years.

14           For example, in his Sixth Claim for Relief, the nature and scope of the conspiracy

15    alleged is to "exclude Dr. Fox from practice at GSH and to otherwise damage Dr. Fox by

16    suspending and withholding his PICU privileges." FAC ¶ 109. Plaintiff contends that the

17    motivation for such concerted action against Plaintiff was to retaliate against him for his

18    advocacy on behalf of patients' rights. FAC ¶ 109. However, Defendants' alleged motivation is

19    irrelevant to defining the nature and scope of the conspiracy - which was to exclude Plaintiff by

20    withholding his privileges. The alleged primary offense completed as a result of this alleged

21    conspiracy was the withholding of Plaintiff's privileges, which by Plaintiff's own admission,

22    occurred in 1999. FAC ¶¶ 1, 109. Any subsequent withholding of Plaintiff's privileges does not

23

24    _____

       [2] While this case dealt with a criminal conspiracy, its conclusions are applicable to a civil

25    conspiracy as well. *See Wyatt*, 24 Cal. 3d at 787 ("The differences between civil and criminal

       conspiracies . . . are somewhat beside the point" in applying the statute of limitations).

26

DEFENDANTS' REPLY TO JOINT MOTION TO DISMISS

1    constitute an overt act sufficient to recommence the statutory period. *See Zamora*, 18 Cal. 3d at

2    560. It is simply the current application of the same rule on each required regulatory

3    reappointment which inflicts a continued injury on Plaintiff.

4    Plaintiff contends that his Seventh Claim for Relief should remain at issue

5    because the FAC "specifically refers to defendants' conduct in the year 2006." Opp. at 13.

6    Paragraph 118 alleges that Plaintiff was "constructively denied" reappointment to the medical

7    staff in 2006. Yet, by his own account, Plaintiff alleges that he was reappointed to the medical

8    staff in 2006. FAC ¶ 67 ("On January 25, 2008, GSH's CEO Pichè . . . stated that he wished to

9    inform Dr. Fox that GSH's Board of Trustees had reappointed Dr. Fox to the medical staff at its

10    meeting of June 28, 2006. He further stated that Dr. Fox's request for pediatric ICU privileges

11    had again been, 'deferred pending your provision of appropriate alternate call coverage.'").

12    Accordingly, Plaintiff can cite to no misconduct within the limitations period that constitutes the

13    requisite injury.

14    As for Plaintiff's Eighth Claim for Relief, Plaintiff has failed to identify the

15    specific acts within the limitations period that disrupted his economic relations with his Referral

16    Sources and the potential patients they would refer. Allegations of conspiracy cannot save

17    Plaintiff from this defective pleading. For this reason and those stated above, Plaintiff's state

18    law claims are time-barred.

19    **B.    Plaintiff's Section 1 Sherman Act Claims Should Be Dismissed.**

20    **1.    Each Of Plaintiff's Claims Should Be Dismissed Because Plaintiff Has**
       **Failed to Plead A Conspiracy.**

21

22    Plaintiff contends Defendants have failed "to acknowledge the factual detail

23    alleged in the FAC, Section IV, entitled 'Facts Common to All Claims for Relief,'" among other

       sections of the FAC. Opp. at 15. However, it is Plaintiff that fails to respond to Defendants'
24
       argument that the FAC is void of allegations demonstrating "enough factual matter (taken as
25
       true) to suggest that an agreement was made." *Bell Atlantic Corp.*, 127 S. Ct. at 1965-66. More
26

DEFENDANTS' REPLY TO JOINT MOTION TO DISMISS

A/72618367.1/2019871-2198710013

1   importantly, Plaintiff does not point to any allegation in the FAC that raises a reasonable

2   expectation that discovery will reveal evidence of an illicit agreement. *Id.* at 1970, n.10. Such

3   allegations must be asserted in the FAC for Plaintiff to survive a motion to dismiss. *Assoc.*

4   *Contractors of Cal., Inc. v. Carpenters,* 459 U.S. 519, 528, n.17 (1983) ("[A] district court must

5   retain the power to insist upon some specificity in pleading before allowing a potentially massive

6   factual controversy to proceed."); *see Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106

7   (7th Cir. 1984) ("[T]he costs of modern federal antitrust litigation and the increasing caseload of

8   the federal courts counsel against sending the parties into discovery when there is no reasonable

9   likelihood that the plaintiffs can construct a claim from the events related in the complaint.").

10        Plaintiff avoids providing such a response by citing to Judge Whyte's Order

11  Granting in Part and Denying in Part Defendants' Motion for Summary Judgment ("MSJ

12  Order"), dated October 9, 2007, in the related case *Fox v. Good Samaritan Hospital, et al.* (Case

13  No. 5:04-cv-00874-RS), in which the Court lists facts from which an unlawful conspiracy could

14  be inferred. Plaintiff's reliance on that order here is improper. Plaintiff has not and cannot offer

15  any basis for applying the orders in that matter to the present case. *See Starker v. U.S.,* 602 F.2d

16  1341, 1344 (9th Cir. 1979) (holding that a party against whom issue preclusion is invoked must

17  have been fully represented in the prior action). The issue here is whether Plaintiff has pled

18  sufficient facts as to whether *these* Defendants engaged in such an unlawful conspiracy.

19  Accordingly, the MSJ Order in the related case does not and cannot have any bearing on whether

20  Plaintiff has alleged sufficient facts here.

21            2.    **Plaintiff's Failure To Allege The Requisite Effect on Interstate**
                    **Commerce Is Fatal to Plaintiff's Section 1 Antitrust Claims.**
22

23        Plaintiff asserts the applicable standard for alleging whether a plaintiff's

    economic activity substantially affects interstate commerce. As set forth by the United States
24
    Supreme Court in *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322 (1991):
25

26            The competitive significance of respondent's exclusion from the
              market must be measured, not just by a particularized evaluation of

6   No. 08-CV-01098 RS

DEFENDANTS' REPLY TO JOINT MOTION TO DISMISS

1    his own practice, but rather, by a general evaluation of the impact
2    of the restraint on other participants and potential participants in
     the market from which he has been excluded.

*Id.* at 332. Here, Plaintiff's allegations are sufficiently different from those in *Pinhas,* such that Plaintiff has not set forth allegations warranting jurisdiction. Specifically, unlike *Pinhas,* where the Court found physician plaintiff alleged "that members of the peer review committee conspired with others to abuse that [peer review] process and thereby deny respondent access to the market for opthalmological services provided by general hospitals in Los Angeles . . . ," Plaintiff has not set forth such extensive allegations here. *Id.* at 332-33. Rather, Plaintiff asserts that the alleged exclusion denied Plaintiff access to the market for PICU Services at a single hospital. FAC ¶¶ 4, 30. Allegations of an exclusion from a single hospital is patently different from those set forth in *Pinhas* and do not constitute a sufficient nexus with interstate commerce to support federal jurisdiction. *Pinhas,* 500 U.S. at 333.

C.    **Plaintiff Has Failed To State A Claim Under Section 2 Of The Sherman Act.**

Plaintiff's cursory response and vague citations to the FAC are unavailing here, as Plaintiff fails to address Defendants' arguments against Plaintiff's Section 2 claims. *See* FAC ¶¶ 46-67. Specifically, Plaintiff failed to assert how the nature of the roles of the individual Defendants establish the requisite market power for Plaintiff's monopolization claims, as Plaintiff's citation to Paragraphs 11 though 15 do nothing more than identify each Defendant. *See* FAC ¶¶ 11-15. Plaintiff's Section 2 claims should therefore be dismissed for the reasons stated in Defendants' Motion. *See* Motion at 13-16.

D.    **Plaintiff's Failure To Allege Sufficient Facts Requires Dismissal Of Each Of Plaintiff's State Law Claims.**

1.    **Plaintiff Has Failed To Allege A Claim For Retaliation.**

Defendants recognize that, pursuant to California law, they may be liable for conspiring to commit a wrongful act. *See Wyatt,* 24 Cal. 3d at 786. However, Plaintiff has failed to allege conduct that, without the conspiracy, would give rise to a cause of action. *See Tietz v.*

7

DEFENDANTS' REPLY TO JOINT MOTION TO DISMISS

A/72618367.1/2019871-2198710013

1   *Los Angeles Unified Sch. Dist.*, 238 Cal. App. 2d 905, 913 (1965); *Harrell v. 20th Century Ins.*

2   *Co.*, 934 F.2d 203, 208 (9th Cir. 1991) (holding no separate cause of action lies for civil

3   conspiracy, and that to establish such an action, plaintiff must show an underlying tort or wrong).

4          To state a claim for retaliation under California Business & Professions Code

5   Section 2056, Plaintiff must assert that the alleged retaliatory conduct occurred principally

6   because of a physician's advocacy of medically appropriate healthcare. *See* Cal. Bus. & Prof.

7   Code § 2056; *In re Pomona Valley Medical Group, Inc.*, 476 F.3d 665, 673 (9th Cir. 2007).

8   Plaintiff alleges in his Opposition that "at ¶¶ 104-110, Dr. Fox has set forth a series of actions

9   taken against him that he alleges were retaliation for his patient advocacy and the Defendants'

10  participation in these actions." Opp. at 17. Yet, Paragraphs 104 to 110 of the FAC do not

11  contain any allegations of retaliation, beyond the blanket statement that "Defendants in

12  combination and individually engaged in acts of retaliation against Dr. Fox from 2004 to 2008

13  for his complaints about quality of care issues." FAC ¶ 110. On these facts, Plaintiff has failed

14  to allege the requisite retaliatory conduct that would give rise to a right of action for conspiracy,

15  and thus, this claim must be dismissed.

16          **2.    Plaintiff Has Failed To Allege Either A Breach Of Contract Or A**
17          **Breach Of The Implied Covenant Of Good Faith and Fair Dealing.**

18          Plaintiff contends in his Opposition that he may proceed on his claim for breach

19  of the implied covenant of good faith and fair dealing because:  (1) Plaintiff has alleged the

    requisite contract between the Hospital and Plaintiff; and (2) Defendants Mr. Pichè and
20
    Dr. Beaupre may be held liable for a breach of the covenant implied therein. Opp. at 18.
21
    Plaintiff's argument is without merit.
22

23          **a.    Plaintiff's Seventh Claim Fails Because The Good Samaritan**
            **Hospital Bylaws Are Not a Contract.**

24          Despite Plaintiff's arguments to the contrary, *Janda* did not hold that hospital

25  bylaws create a contract between a physician and the hospital as a matter of law. Opp. at 19; *See*

26  *Janda v. Madera Cmty Hosp.*, 16 F. Supp. 2d 1181, 1187 (E.D. Cal. 1998) (explaining that

DEFENDANTS' REPLY TO JOINT MOTION TO DISMISS

1    unlike medical staff bylaws, state law "does not impose a requirement on physicians to comply

2    with the bylaws adopted by the governing body of the hospital."). Rather, the *Janda* Court held

3    only that the hospital bylaws constituted a contract between a physician and the hospital, in that

4    specific instance, because the hospital bylaws became "incorporated into a *separate [employment*

5    *agreement]* between the hospital and the physician," other than that which was required by law.

6    *O'Byrne v. Santa Monica-UCLA Medical Ctr.*, 94 Cal. App. 4th 797, 810 (2001) (emphasis

7    added); *see Janda*, 16 F. Supp. 2d at 1188 (explaining that "Dr. Janda's contract requires him to

8    abide by the Hospital's Bylaws, which are an integral element of the parties' contractually

9    bargained-for employment relationship."). Here, Plaintiff does not allege that he entered into

10   any such separate agreement with the Hospital, let alone that the Hospital Bylaws were

11   incorporated into that agreement.[3] *See* FAC ¶¶ 113-122.

12            To the extent Plaintiff seeks to rely on the Privileging Agreements as a separate

13   agreement in which the Hospital Bylaws were incorporated, Plaintiff's argument is unavailing as

14   Plaintiff has not alleged facts demonstrating that the Privileging Agreements constitute a contract

15   as a matter of law. *See* Cal. Civ. Code § 1550; *O'Byrne*, 94 Cal. App. 4th at 809-10; *Ennix v.*

16   *Stanten*, 2008 WL 1902714, *9-10 (N.D. Cal. April 28, 2008) (holding that plaintiff created a

17   triable issue of fact as to whether a contract existed between the hospital and the physician,

18   without deciding whether the privileging agreement could constitute a contract).

19            The Privileging Agreements referenced by Plaintiff in the FAC, are nothing more

20   than that which is required by state law. As noted in Defendants' Motion (Motion at 18), Section

21   70703 requires the medical staff to adopt and follow bylaws "which provide formal procedures

22

23   _____

[3] Pursuant to Plaintiff's Opposition, Plaintiff has conceded that the Medical Staff Bylaws do not
24   constitute a contract (Opp. at 18), and apparently has abandoned any argument that the
     Privileging Agreements serve as the requisite contract for this claim. Accordingly, the Hospital
25   Bylaws are now the only alleged contract upon which Plaintiff bases this claim. *See* Opp. at 18-
     19; FAC ¶¶ 114-117.

26

9                                      No. 08-CV-01098 RS

1  for the evaluation of staff applications and credentials, appointments, reappointments,

2  assignment of clinical privileges, appeals mechanisms and such other subjects or conditions

3  which the medical staff and governing body deem appropriate." 22 Cal. Admin. Code

4  § 70703(b). Section 70703(b) further mandates that the Medical Staff must follow those bylaws.

5  *Id.* Where Plaintiff only alleges that Defendants evaluated Plaintiff's applications for credentials

6  and privileges, Plaintiff has not alleged that Defendants did anything other than that which they

7  were legally required to do. Thus, much like the Medical Staff Bylaws, such Privileging

8  Agreements do not constitute a contract as a matter of law. *O'Byrne*, 94 Cal. App. 4th at 810.

9                  **b.**     **Plaintiff Fails To Allege A Breach Of The Implied Covenant Of**

10                          **Good Faith And Fair Dealing Under Tort Law.**

11         Even if the Hospital Bylaws are a separate contract, Plaintiff may not pursue a

12  breach of the implied covenant against Defendants Mr. Pichè and Dr. Beaupre under a tort

13  theory. California courts have consistently held that a breach of the implied covenant is

14  generally an action under contract, not in tort. Opp. at 19; *Foley v. Interactive Data Corp.,* 47

15  Cal. 3d 654, 700 (1998). While the California Supreme Court has found some exceptions to the

16  general rule, those exceptions have been expressly limited to the insurance context. *See Cates*

17  *Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 60-61 (1999).

18         Specifically, the California Supreme Court held that a breach of the implied

19  covenant generally does not give rise to tort liability, in a non-insurance context, in the absence

20  of a violation of an independent duty arising from tort law. *Freeman & Mills, Inc. v. Belcher Oil*

21  *Co.*, 11 Cal. 4th 85, 102 (1995). Moreover, no California court has extended the theory of a

22  tortious breach of the implied covenant of good faith and fair dealing beyond the insurance

23  context and such an extension is unwarranted in this case. *Id.* (cautioning courts to take great

24  care in considering whether to extend the "exceptional approach" taken in insurance cases to

25  another contract setting); *see Cates Constr., Inc.*, 21 Cal. 4th at 46, n.9; *Careau & Co. v. Sec.*

26  *Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1399, n.25 (1990).

A/72618367.1/2019871-2198710013

1    Plaintiff attempts to overcome this precedent by arguing that a tortious breach of

2    the implied covenant claim should be extended here because:  (1) hospital bylaws deal with a

3    physician's hospital privileges and impact a public interest; and (2) hospitals are highly regulated

4    quasi-public institutions with fiduciary responsibilities to both patients and staff.[4]  Opp. at 20.

5    Plaintiff's arguments are without merit.

6    State law requires a hospital to set forth procedures for the selection and

7    reappointment of its medical staff, not for the benefit of the physician, but rather in furtherance

8    of assuring the provision of quality patient care. 22 Cal. Admin. Code §§ 70701, 70703. *See*

9    *Cipriotti v. Bd. of Dir.*, 144 Cal. App. 3d 144, 157 (1983) ("It is important to remember that

10   license suspension, revocation or other similar disciplinary proceedings involving licensees are

11   not for the purpose of punishment but primarily to protect the public served by the licensee . . .");

12   *Elam v. College Park Hosp.,* 132 Cal. App. 3d 332, 346 (1982) (holding that a hospital owes its

13   *patients* a legal duty to exercise reasonable care in selecting, reviewing and periodically

14   evaluating the competency of the physician it permits to treat patients within its facilities); *Miller*

15   *v. Eisenhower Med. Ctr.*, 27 Cal. 3d 614, 628 (1980) ("It cannot be denied that the providing

16   high quality patient care is, quite properly, the primary concern of all hospital institutions.").

17   Since the Hospital only owes patients a duty of care in the credentialing of the physicians it

18   permits to practice at the Hospital, Plaintiff cannot allege the requisite independent tort duty

19   required for Plaintiff to pursue a breach of the implied covenant under a tort theory here.

20             c.    **Defendants Mr. Pichè and Dr. Beaupre Cannot Be Held
                     Individually Liable As A Matter Of Law.**

21

22   _____

[4] Plaintiff's citation to *Ascherman v. St. Francis Mem'l Hosp.*, 45 Cal. App. 3d 507, 513 (1975),

23   is unavailing. *Ascherman* merely extended the standard of fair procedure governing public
     hospitals to private hospitals, on the grounds that membership decisions of a hospital must be

24   rendered pursuant to fair procedure regardless of whether a hospital is public or private. *See id.*
     Plaintiff's citation to *Ascherman's* public service analysis is inapplicable here as it relates to the

25   extension of fair procedure requirements. *Ascherman* does not address whether a plaintiff can
     state a breach of the implied covenant under a tort theory. *Id.* at 511.

26

11

1    Plaintiff's Seventh Claim for Relief ultimately fails on the ground that, even if
2    Plaintiff successfully alleged that the Hospital Bylaws constitute a contract, Defendants
3    Mr. Pichè and Dr. Beaupre cannot be held liable for a breach of that contract or breach of the
4    implied covenant as a matter of law.  As set forth in Defendants Motion (Motion, at 18) and in
5    Section III.D.2.a supra, the contract Plaintiff alleges is one between the Hospital and Plaintiff.
6    Defendants Mr. Pichè and Dr. Beaupre are not parties thereto and therefore cannot be liable for
7    breach of the contract.

8    Plaintiff asserts in his Opposition that Defendants can be held liable for breach of
9    the implied covenant because officers and directors of a corporation may be held personally
10   liable for the acts of the corporation if they directly ordered, authorized, or participated in the
11   tortious conduct.  Opp. at 21 (citing *Wyatt*, 24 Cal. 3d at 785).  For the reasons set forth in
12   Section III.D.2.b above, Defendants cannot be held personally liable for breach of the implied
13   covenant because Plaintiff's claim is founded in contract, not tort.  Moreover, California case
14   law unequivocally holds that a director, officer or agent may not be held personally liable for the
15   breach of the Hospital's contracts, even though they may act as agents of the corporation.  *Swartz*
16   *v. KPMG, LLC*, 401 F. Supp. 2d 1146, 1154 (W.D. Wash. 2004) (dismissing a claim for breach
17   of contract because an agent is not liable for the contractual duties of its principal).  For this
18   reason and those set forth above, Plaintiff's Seventh Claim for Relief should be dismissed.

19
            **3.    Plaintiff Has Failed To Allege A Claim For Interference With**
                    **Prospective Economic Relations.**
20
            Despite Plaintiff's arguments to the contrary, Plaintiff specifically fails to allege
21
     the facts required to state a claim for relief.  As noted in Defendants' Motion, Plaintiff fails to
22
     allege the legal standard by which the requisite independent acts alleged would be unlawful and
23
     Plaintiff's citation to Paragraphs 126 and 127, does not support Plaintiff's contention that the
24
     FAC alleges such activity was done "in contravention of Good Samaritan's medical staff bylaws
25
     during the period 2004-2008."  Opp. at 21.  *See* FAC ¶¶ 123-128.  However, Plaintiff seeks to
26

12

DEFENDANTS' REPLY TO JOINT MOTION TO DISMISS

1   avoid the granting of this motion to dismiss by asserting those missing allegations (namely, that

2   the allegations in Paragraph 126 plead instances constituting a violation of the Medical Staff

3   Bylaws pursuant to Section 70703 of the California Code of Regulations, title 22) in his

4   Opposition to Defendants' Joint Motion to Dismiss. Opp. at 21.

5          Plaintiff's assertion of the requisite allegations in his opposition to a motion to

6   dismiss, cannot save Plaintiff's claim as pled in the FAC: "it is axiomatic that the complaint may

7   not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc.*, 745 F.2d

8   at 1107 (explaining that "it may have been questionable for the district court to have relied on the

9   plaintiffs' briefs to embellish the conclusory allegations of the complaint"). Plaintiff's failure to

10  allege facts stating a claim for relief requires dismissal of this cause of action.

11         Further, Plaintiff has failed to adequately plead facts demonstrating that he had an

12  economic relationship with a probability of future economic benefit with his Referral Sources.

13  Opp. at 22. Plaintiff seeks to avoid dismissal on this ground by arguing that he has pled the

14  requisite "economic relationship with a probability of future economic benefit" with his Referral

15  Sources. Plaintiff contends that he must only allege that he has been "denied his right to pursue

16  a profession by other competing doctors who conspire to keep patients from the doctor," to state

17  a claim. Opp. at 23 (citing *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 620

18  (1989)). Plaintiff's reliance on *Fisher* here is improper.

19         To state a claim for interference, Plaintiff must allege that an actual economic

20  relationship is disrupted, not merely a hope of future transactions. Motion at 21 (citing *Janda,*

21  16 F. Supp. 2d at 1190). Plaintiff's assertion that he can point to his Referral Sources as the

22  disrupted economic relationship is incorrect. Opp. at 23; *Fisher*, 214 Cal. App. 3d at 619-20.[5]

23  _____

24  [5] In fact, the *Fisher* Court specifically held that a disruption of a physician's ability to refer to

25  another physician is *not* the type of economic interest which this tort was designed to protect.
    *Fisher*, 214 Cal. App. 3d at 620.

26

                                        13                        No. 08-CV-01098 RS

1    The supposedly disrupted economic relationship was not the relationship between Plaintiff and

2    his Referral Sources.  Rather, the prospective relationship was Plaintiff's relationship to a class

3    of unknown future patients. *Blank v. Kirwan*, 39 Cal. 3d 311, 330 (1985) (citing *Asia Investment*

4    *Co. v. Borowski*, 133 Cal. App. 3d 832, 841 (1982)).  California courts have repeatedly held that

5    a pleading as to future lost patients is "speculative and insufficient" because a plaintiff must

6    establish more than a hope of a future transaction. *Janda*, 16 F. Supp. 2d at 1190; *Hotel & Rest.*

7    *Employees Union v. Francesco's B. Inc.*, 104 Cal. App. 3d 962, 966-67 (1980) (dismissing

8    prospective economic advantage claim because plaintiff did not allege "actual disruption" of an

9    economic relation where complaint only alleged that "respondents interfered, and conspired to

10   interfere with the relationship between the Union and numerous unnamed 'hotel and culinary

11   employees.'").  Where Plaintiff's FAC is void of any allegations about the future economic

12   benefit of which Plaintiff will be deprived, Plaintiff has failed to state a claim.  Accordingly,

13   Plaintiff's Eighth Claim should be dismissed.

14   **IV.    CONCLUSION**

15        For the reasons stated, Defendants respectfully request that the Court dismiss

16   Plaintiff's First Amended Complaint in its entirety, with prejudice.

17   DATED: August 6, 2008              BINGHAM McCUTCHEN LLP

18

19                                     By:_____/s/ Beth McGowen_____

20                                          BETH McGOWEN
                                         Attorneys for Defendants
21                                   WILLIAM PICHÈ, PAUL N. BEAUPRE,
                                     M.D., ARTHUR W. DOUVILLE, M.D., AND
22                                       KENNETH I. TAN, M.D.

23

24

25

26

                                  14                        No. 08-CV-01098 RS

A/72618367.1/2019871-2198710013