1  BINGHAM MCCUTCHEN LLP
   ROSS E. CAMPBELL (SBN 75998)
2  *ross.campbell@bingham.com*
   BETH McGOWEN (SBN 148747)
3  *beth.mcgowen@bingham.com*
   1900 University Avenue
4  East Palo Alto, CA 94303-2223
   Telephone: (650) 849-4400
5  Facsimile: (650) 849-4800

6  DAVID C. HALL (*pro hac vice*)
   *dhall@hpslaw.com*
7  HALL PRANGLE & SCHOONVELD, LLC
   200 South Wacker Drive, Suite 3300
8  Chicago, Illinois 60606
   Telephone: (312) 267-6201
9  Facsimile: (312) 345-9608

10 Attorneys for Defendants
   WILLIAM PICHÈ, PAUL N. BEAUPRE, M.D.,
11 ARTHUR W. DOUVILLE, M.D., MARK S.
   MCCONNELL, M.D., AND KENNETH I. TAN, M.D.
12

13                UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                        SAN JOSE DIVISION

16

| 17 | RICHARD B. FOX, M.D., | No. 08-CV-01098 RS |
|---|---|---|
| 18 | Plaintiff, | DEFENDANT MARK S. MCCONNELL, M.D.'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) |
| 19 | v. | |
| 20 | WILLIAM PICHÈ, PAUL N. BEAUPRE, M.D., ARTHUR W. DOUVILLE, M.D., MARK S. MCCONNELL, M.D., AND KENNETH I. TAN, M.D. | |
| 21 | | |
| 22 | Defendants. | Date: September 10, 2008<br>Time: 9:30 a.m.<br>Place: Courtroom 4<br>Judge: Hon. Richard Seeborg |

23
24
25
26

1                                                              No. 08-CV-01098 RS

DEFENDANT MARK S. MCCONNELL, M.D.'S REPLY IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

A/72636886.1/2019871-2198710013

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff does not contend in his Opposition that he sufficiently alleged Defendant Mark S. McConnell, M.D. ("Dr. McConnell" or "Defendant McConnell") engaged in any direct conduct that supports his claims against Dr. McConnell. Rather, Plaintiff contends that the claims against Dr. McConnell rise and fall on Plaintiff's theories that Dr. McConnell is either liable for NorCal PICU's alleged request that the rules governing PICU privileges be amended in 2004, or the acts of his alleged co-conspirators from 2004 through 2008. However, both of Plaintiff's arguments fail because Plaintiff still has not asserted a claim for relief against Dr. McConnell within the applicable limitations period of 2004 through 2008.

Even if Plaintiff had asserted facts sufficient to state such a claim, Dr. McConnell cannot be held liable for the acts of his alleged co-conspirators, as Dr. McConnell affirmatively left any such alleged conspiracy when he left Good Samaritan Hospital ("GSH") and relocated to Idaho in late 2004.[1] Since none of the conduct alleged in the FAC can be attributed to Dr. McConnell, either directly or under a co-conspirator theory, each of the claims directed toward Dr. McConnell in the FAC should be dismissed, with prejudice.

## II. ARGUMENT

### A. Plaintiff's Antitrust Claims Against Dr. McConnell Are Time-Barred Because Plaintiff Failed To Allege A New And Independent Act During The Limitations Period.

The standard for stating an antitrust claim within the statute of limitations is undisputed. It is well established that a civil cause of action under the antitrust laws arises each time the plaintiff's interest is invaded to his damage, and the statute of limitations begins to run

---

[1] Plaintiff admits in the First Amended Complaint ("FAC") that Dr. McConnell left to practice in Idaho following the closure of San Jose Medical Center in late 2004. FAC ¶¶ 21 ("This continued through 2004 as to Dr. McConnell."), 53, 58.

2   No. 08-CV-01098 RS

DEFENDANT MARK S. MCCONNELL, M.D.'S REPLY IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)
A/72636886.1/2019871-2198710013

at that time. *In re Multidistrict Vehicle Air Pollution v. Gen. Motors Corp.,* 591 F.2d 68, 70 (9th Cir. 1979) ("AMF") (citing *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1270 (9th Cir. 1975)). In the context of a continuing conspiracy, such as that alleged here, Plaintiff is permitted to seek recovery for an injury caused by a prohibited practice that begins prior to the limitations period. *Id.* at 71. However, Plaintiff "can recover only for damages caused by forbidden 'overt acts' of the conspirators within the limitations period." *Id.* (citing *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 338 (1971) (emphasis added)).

Plaintiff seeks to hold Dr. McConnell individually liable for conduct which occurred between 2004 through 2008, and was caused by a conspiracy that began prior to the limitations period. FAC ¶¶ 3, 45, 74. To do so, Plaintiff must allege (1) a new and independent act of Dr. McConnell that is not merely a reaffirmation of a previous decision, and (2) that inflicts new and accumulating injury on plaintiff, in the limitations period of 2004 through 2008. *Pace Indus., Inc. v. Three Phoenix Co.,* 813 F.2d 234, 238 (9th Cir. 1987); *AMF*, 591 F.2d at 72 (explaining that if all the harm experienced by plaintiff arises from a pre-limitations act by defendant, "no new cause of action accrues for any subsequent acts committed by defendant within the limitations period because those acts do not injure plaintiff.") (citations omitted); Plaintiff's Memorandum in Opposition to Defendant McConnell's Motion to Dismiss ("Opp."), at 6-7.[2]

The issue presented by this motion, and at the August 20, 2008 hearing on Defendants' Joint Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket No. 42), is whether the injuries alleged by Plaintiff in the FAC constitute a single permanent injury or whether the injury alleged is the consequence of multiple wrongs, each of

---

[2] Notably, Plaintiff does not cite to a single case in support of his proposition that "'[n]ew and independent acts' may include active enforcement of policies first put into place outside the limitations period." Opp. at 7:1-2. In fact, the holding in *AMF* directly contradicts Plaintiff's argument. *See AMF,* 591 F.2d at 72.

which restarts the limitations period. *AMF*, 591 F.2d at 71-72. For the reasons set forth below, the injury Plaintiff alleges does not support a finding that such injury was a consequence of multiple wrongs occurring during the limitations period. Accordingly, each of Plaintiff's antitrust claims directed toward Dr. McConnell should be dismissed, with prejudice.

### 1. Plaintiff's Injury Alleged In The FAC.

The analysis of whether Plaintiff has alleged the requisite injury begins with a review of the injury alleged. The injury Plaintiff alleges in the FAC arises from his alleged exclusion from GSH in 1999 and his inability to regain his privileges since then because of the enactment and subsequent enforcement of the alternate call coverage rule (requiring him to designate two physicians who agreed to provide alternate call coverage). FAC ¶¶ 1, 33. As demonstrated by the case law discussed below, Plaintiff has not alleged any new and accumulating injury during the limitations period. Pursuant to *Pace* and *AMF*, Plaintiff's injury was final in 1999. Plaintiff's subsequent applications for reappointment pursuant to state law every two years, and the hospital's uniform deferral of Plaintiff's request every two years pending provision of appropriate alternate call coverage, is nothing more than a reaffirmation of the initial deferral of Plaintiff's privileges in 1999. In reapplying for privileges, Plaintiff had no expectation that he would be granted the privileges he requested with each subsequent application for reappointment. Thus, the deferral of such requests did not inflict a new injury on Plaintiff. Rather, Plaintiff's repeat applications were merely a "forlorn inquir[y] by one all of whose reasonable hopes had been previously dashed." *AMF*, 591 F.2d at 72.

### 2. Governing Precedent Warrants A Finding That Plaintiff Has Failed To Allege A New And Independent Injury.

Plaintiff seeks to avoid this conclusion, by arguing in his Opposition that the facts of this case are more like those presented in *Columbia Steel* and *Hennegan,* than *AMF* or *Pace*, and thus, this Court should find that the alleged exclusion of Dr. Fox from GSH from 2004 through 2008 states a claim within the limitations period. However, the claims alleged herein are

patently different from those alleged in *Columbia Steel* and *Hennegan*.

For example, in Columbia Steel[3], the Court held that Plaintiff was permitted to seek damages from injuries inflicted in 1990, because Plaintiff had suffered damages from continued, separate antitrust violations within the limitations period. *Columbia Steel Casting Co., v. Portland Gen. Elec.,* 111 F.3d 1427, 1445 n.19 (9th Cir. 1996). However, the Court also held that Plaintiff was not entitled to recover damages for injuries alleged to have been inflicted *prior to the limitations period*. *See id.* at 1444. The Court explained that "the 1972 agreement was not a permanent and final decision that controlled the later act," because the 1972 agreement did not create an exclusive services agreement between PG&E and PP&L. *See id*. Since the 1972 agreement did not establish an exclusive services agreement, PG&E could not claim that its decision regarding the provision of electricity to PP&L in 1989 was controlled by or a reaffirmation of that agreement. *See id.* Thus, PG&E made its own independent decision as to whether it was attempting to maintain exclusive service territories, and that independent decision warranted the Court's finding that Plaintiff's claims were not barred by the statute of limitations. *See id*.

Similarly, *Hennegan v. Pacifico Creative Service, Inc.*, also stands for the proposition that the subsequent deferrals of Plaintiff's requests for privileges every two years are not the requisite new and independent acts upon which a new limitations period may begin to run. In *Hennegan*, unlike the case stated by Plaintiff here, plaintiff had alleged a continuing conspiracy, in which defendants committed overt acts that injured Hennegan's business within

---

[3] In *Columbia Steel*, a dispute arose between Columbia Steel and two energy companies, Portland General Electric's ("PG&E") and Pacific Power & Light's ("PP&L") regarding which company would supply energy to Columbia Steel's casting plant. *Columbia Steel,* 111 F.3d at 1432. In 1989, Columbia Steel asked PP&L to provide electrical service to its plant, which it agreed to do. *Id.* at 1435. However, PG&E (PP&L's direct competitor) objected to this agreement because PG&E contended it had an exclusive right to service Columbia Steel's plant pursuant to a 1972 agreement with PP&L. *Id.*

5                                                    No. 08-CV-01098 RS

DEFENDANT MARK S. MCCONNELL, M.D.'S REPLY IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)
A/72636886.1/2019871-2198710013

the limitations period (i.e. the payments by souvenir vendors to the tour operators and the tour operator's shepherding of tourists away from the Hennegan's souvenir shop to the shops of the other souvenir vendors during the limitations period constituted a new and independent injury). *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1302 (9th Cir. 1986). Plaintiff did not allege such facts here. Thus, Plaintiff's case is more akin to *AMF* than either *Columbia Steel* or *Hennegan*.

In *AMF*, the Court held that the action was barred by the applicable statute of limitations because AMF's exclusion from the afterburner market was complete prior to the limitations period. *AMF*, 591 F.2d at 72. It also found that AMF's subsequent inquiries in 1965 to appellees, Ford and International Harvester, and their respective refusals to deal in response thereto, did not constitute a forbidden overt act of the continuing conspiracy. *Id.* Likening AMF's position to that of a disappointed patron of the theater, the Court explained that AMF's exclusion in 1964, is similar to the injury incurred by a theater patron who is turned away at eight o'clock because the performance is sold out. *Id.* at 71. The patron's "exclusion occurs at eight, not during the performance or when it concludes at eleven o'clock." *Id.* The Court explained that AMF's argument that it was not irrevocably excluded at eight o'clock but rather was told to call again, just before curtain time at eight-thirty (and therefore AMF's exclusion could not be final until eight-thirty) was incorrect. *Id.* The Court held that any injury to AMF is attributable to the final denials by the appellees in 1964, and that contacts initiated by AMF thereafter do not indicate otherwise. *Id.* at 72. AMF's requests following the initial denial thereof, were merely "forlorn inquiries by one all of whose reasonable hopes had been previously dashed. That is, appellees had indicated clearly and irrevocably an intent to look to their own devices or modifications thereof for the 1966 model year." *Id*.

The enactment and enforcement of the alternate call coverage rule in 1999 is equivalent to AMF's refusal to deal in 1964 and reaffirmations of that initial decision in response to Plaintiff's subsequent requests. As indicated in *AMF*, Plaintiff cannot now try to recover for

6    No. 08-CV-01098 RS

DEFENDANT MARK S. MCCONNELL, M.D.'S REPLY IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)
A/72636886.1/2019871-2198710013

1   the harm caused by the initial exclusion, by making a subsequent request for the same privileges,
2   even though he knew his request would be denied. *Pace Industries, Inc.*, 813 F.2d at 238-39
3   ("We see no justification for permitting the aggrieved party to file an action in antitrust more
4   than four years after the conclusion of perhaps protracted litigation between the same parties
5   over the same contract. . . Pace was clearly aware of its antitrust claim . . . [in] the state court
6   enforcement action. . . . in which the antitrust laws are clearly at issue, [and] started the
7   limitation time running."). For the reasons set forth above, Plaintiff has failed to allege the
8   requisite injury within the limitations period to state a claim against Dr. McConnell.

9   **B.  Plaintiff's State Law Claims Against Dr. McConnell Are Time-Barred Because Plaintiff Failed To Allege A Last Overt Act During The Limitations Period.**

11  The issue presented by Plaintiff is whether the "last overt act" doctrine tolls the
12  statute of limitations on these claims to the present time. The "last overt act doctrine" holds that
13  the statute of limitations does not begin to run until the final act in furtherance of the conspiracy
14  has been committed. *Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 786 (1979). However, a
15  court must first define the nature and scope of the particular conspiracy, including the
16  "substantive offense which is the primary object of the conspiracy," before it can determine
17  whether an act is committed in furtherance of the conspiracy. *See Livett v. F.C. Fin. Assoc.*, 124
18  Cal. App. 3d 413, 419 (1981); *see People v. Zamora*, 18 Cal. 3d 538, 560 (1976).

19  Plaintiff claims in his Opposition that "Dr. Fox plainly alleges that there is
20  ongoing conduct by some or all defendants pursuant to these conspiracies extending right up to
21  the present time." Opp. at 13:14-17. However, Plaintiff does not cite to any specific paragraph
22  in the FAC upon which he relies. *See id*. Since there are no such allegations, Plaintiff has
23  simply failed to allege a "last overt act" which would restart the limitations period within the past
24  two years.

25  For example, in his Sixth Claim for Relief, the nature and scope of the conspiracy
26  alleged is to "exclude Dr. Fox from practice at GSH and to otherwise damage Dr. Fox by

suspending and withholding his PICU privileges." FAC ¶ 109. Plaintiff contends that the motivation for such concerted action against Plaintiff was to retaliate against him for his advocacy on behalf of patients' rights. FAC ¶ 109. However, Defendants' alleged motivation is irrelevant to defining the nature and scope of the conspiracy - which was to exclude Plaintiff by withholding his privileges. The alleged primary offense completed as a result of this alleged conspiracy was the withholding of Plaintiff's privileges, which by Plaintiff's own admission, occurred in 1999. FAC ¶¶ 1, 109. Any subsequent withholding of Plaintiff's privileges does not constitute an overt act sufficient to recommence the statutory period. *See Zamora*, 18 Cal. 3d at 560. It is simply the current application of the same rule on each required regulatory reappointment which Plaintiff contends inflicts a continued injury on Plaintiff.

With regard to Plaintiff's Eighth Claim for Relief, Plaintiff has failed to identify the specific acts within the limitations period that disrupted his economic relations with his Referral Sources and the potential patients they would refer. Allegations of conspiracy cannot save Plaintiff from this defective pleading. For this reason and those stated above, Plaintiff's state law claims are time-barred.

### C. Even if Plaintiff Stated a Claim Within The Limitations Period, Plaintiff's Claims Fail Because Dr. McConnell Cannot Be Held Liable As A Co-Conspirator Here.

In his Opposition, Plaintiff essentially admits that Defendant McConnell did not personally commit a wrongful act within the four year statute of limitations. *See* Opp., at 12:3-18.[4] Thus, Plaintiff's claims against Dr. McConnell rise and fall on his theories that

---

[4] Plaintiff's citation to Judge Whyte's Summary Judgment Order in Fox I is both improper and inapposite here. Opp. at 5:8-16. As argued before the Court on August 20, 2008, the doctrine of issue preclusion precludes the direct application of orders in Fox I to Fox II. Moreover, even if those orders were applicable or provided appropriate guidance, these orders remain unavailing because Judge Whyte's findings on summary judgment address whether Plaintiff could state a claim for conspiracy, *against corporate defendants*, for conduct between 1999 and 2004, and is based on evidence of such alleged misconduct between 1999 and 2004. Where Plaintiff seeks to hold Dr. McConnell individually liable for conduct between 2004 and 2008, the MSJ Order

(Footnote Continued on Next Page.)

8   No. 08-CV-01098 RS

DEFENDANT MARK S. MCCONNELL, M.D.'S REPLY IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)
A/72636886.1/2019871-2198710013

Dr. McConnell is liable either for NorCal PICU's alleged request that the rules governing PICU privileges be amended in 2004, or that he should be held liable for the alleged acts of his co-conspirators. Defendant need not address the former argument here, as that argument was thoroughly addressed in Defendant's moving papers. Docket No. 51, Section IV.A.

With regard to the latter, Plaintiff contends that Dr. McConnell is liable for the acts of his co-conspirators from 1999 through 2008. Opp. at 2:22-24.[5] The fallacy with this contention is that Defendant McConnell cannot be held liable for substantive offenses committed after he withdrew from the alleged conspiracy. *Pinkerton v. U.S.*, 328 U.S. 640, 647-48 (1946) (sustaining the conviction of a co-conspirator even though there was no evidence of his direct participation, because the co-conspirator did not undertake any affirmative action to establish his withdrawal from the conspiracy); *Beltz Travel Serv., Inc. v. Int'l Air Transport Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980); *compare United States. v. Lothian*, 976 F.2d 1257, 1262-64 (9th Cir. 1992) (acquitting a defendant (on several counts) who voluntarily and affirmatively ceased his participation in the allegedly unlawful scheme when he resigned from the company and moved away to begin a new and unrelated enterprise).

To effectively withdraw from a conspiracy, a defendant must resign in such a way that he unequivocally denounces his involvement therewith. *In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1151-52 (7th Cir. 1981) ("Unless an individual can show withdrawal from the conspiracy by an affirmative act designed to defeat the purpose of the conspiracy, that defendant remains liable for all acts committed by co-conspirators until the conclusion of the conspiracy."). Where a defendant resigns from his current employment and

---

(Footnote Continued from Previous Page.)

provides minimal guidance here.

[5] However, in the FAC, Plaintiff seeks to hold Dr. McConnell individually liable (FAC ¶ 74) only for those actions in which he allegedly participated from 2004 through 2008. FAC ¶¶ 3, 45.

9     No. 08-CV-01098 RS

DEFENDANT MARK S. MCCONNELL, M.D.'S REPLY IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)
A/72636886.1/2019871-2198710013

1  relocates, however, that defendant has effectively withdrawn from a conspiracy. *Lothian*, 976
2  F.2d at 1262, 1264.

3  On its face, the FAC discloses that Defendant McConnell withdrew from the alleged conspiracy "to eliminate Dr. Fox as Dr. McConnell's competitor."  Opp. at 12:3-5; FAC ¶¶ 21, 53, 58.  As Plaintiff alleges, Defendant McConnell left NorCal PICU to practice in Idaho (FAC ¶ 53) following the closure of SJMC in 2004.  FAC ¶ 58.  Where, as here, Dr. McConnell relocated his practice to another state, he was clearly no longer in competition with Plaintiff and, more importantly, he did not stand to gain any benefit from Plaintiff's exclusion from GSH.  Moreover, Dr. McConnell's relocation to Idaho constitutes a "definite, decisive, and positive step" to dissociate himself from any such alleged conspiracy.  *Lothian*, 976 F.2d at 1264.  Plaintiff's arguments to the contrary notwithstanding, this withdrawal precludes Dr. McConnell from being found liable for the acts of his alleged co-conspirators from 2004 through 2008.

### III. CONCLUSION

For the foregoing reasons and those set forth in Defendants moving papers, Defendant McConnell respectfully requests that this Court dismiss Plaintiff's First Amended Complaint in its entirety, with prejudice.

DATED:  August 27, 2008         BINGHAM McCUTCHEN LLP

By: /s/ Beth McGowen
BETH McGOWEN
Attorneys for Defendants
WILLIAM PICHÈ, PAUL N. BEAUPRE, M.D.,
ARTHUR W. DOUVILLE, M.D., MARK S.
MCCONNELL, M.D., and KENNETH I. TAN, M.D.